## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELIZABETH NELSON,                                   **Case No. 22-cv-12710**
individually and on behalf of
similarly situated persons defined herein,

        Plaintiff,

   v.

I.Q. DATA INTERNATIONAL, INC.,

        Defendant.

## COMPLAINT - CLASS ACTION

## INTRODUCTION

1.    Plaintiff Elizabeth Nelson (née Doerr) ("NELSON"), brings this putative class action, under the Fair Debt Collection Practices Act ("FDCPA") and state law, against I.Q. Data International, Inc., ("I.Q."), falsely claiming "Interest Due", when the landlord-tenant agreement between NELSON and the original creditor, U.S. Bank Trust Company, North America, as Trustee of the LSF9 Master Participation Trust, ("U.S. BANK TRUST"), for a single family residential home, that did not provide for any rate of interest to be applied upon an alleged breach of the agreement, and Michigan law does not support any "Interest Due" at the time of I.Q.'s demand for payments.

2.     I.Q. unilaterally added the "Interest Due" to the principal amount of the debt and did so without authorization from the original creditor U.S. BANK TRUST to do so.

3.     I.Q. has been sued before on a class basis under the FDCPA, and settled on a class basis, for attempting to collect interest not provided for in the underlying creditor-debtor contract, instrument, or under state law.  E.g. *Esposito v. I.Q. Data International, Inc*, 2:18-cv-00437-JES-NPM (M.D. Fla.); e.g. *Garcia Galdamez et al. v. I.Q. Data International, Inc*, 1:15-cv-01605-LMB-JFA (E.D. Va.)

4.     NELSON also alleges a putative class claims for declaratory and injunctive relief for this Court to declare that in Michigan that I.Q. cannot add interest to the principal amount of the debt when attempting to collect a debt arising from a contract that does not contain a rate of interest to be applied upon an alleged breach of contract, and to enjoin I.Q. from future representations that interest is "due" when attempting to collect a debt on such contracts, and disgorgement of interest paid above the amount of the principal amount claimed to be due.

5.     NELSON also alleges a putative class claims under the FDCPA that I.Q. failed to provide the name of the real original creditor, here as to NELSON, after her dispute of the debt, identifying the "Original Creditor:  HUDSON HOMES MANAGEMENT, LLC ( ", an entity NELSON had no knowledge of, instead of the true original creditor, U.S. BANK TRUST.

6. NELSON disputed liability on the debt, in writing, and a reasonably prudent debt collector exercising due care, would have notice from its client's records that NELSON had vacated the property, the lease had terminated with a zero dollar ($0.00) balance owing, and that the debt claimed to be owed was for rent began months after NELSON had vacated the property and on a date after the term of the lease had terminated, but nevertheless almost one year after the dispute continued I.Q. attempt to collect a "Total Due:    $30928.89", and informed NELSON that "[b]ecasue of interest . . . the amount due on the day you pay may be greater.  Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment[.]"

## JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 1331 (Federal Question), 15 U.S.C. §1692k(d) (FDCPA), 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 1367(a) (supplemental jurisdiction) (the claims for declaratory and injunctive relief, discouragement and under the Michigan Occupational Code, as with the FDCPA claim, likewise requires Court to determine whether I.Q. can state interest, at rate of 5% per annum, as being "Due" and seek to collect that interest as being "Due", when the underlying leasing contracts do not provide a rate of interest at all.)

8. "[U]nder Sixth Circuit precedent, the types of misrepresentations that are sufficient in and of themselves to create a concrete injury are restricted to the

heartland of misrepresentations that Congress intended to prevent when it enacted the FDCPA, namely: (i) misrepresentations as to whether the plaintiff owed the debt, such as misstatements regarding the identity of the debtor, the amount of debt owed, or the validity of the debt; (ii) misrepresentations that could cause the plaintiff to waive his procedural rights under the FDCPA; and (iii) threats of arrest or criminal prosecution if the plaintiff fails to pay the debt." *Randolph v. Cong. Collection LLC*, Civil Action No. 20-cv-12146, 2021 U.S. Dist. LEXIS 83790, at *8 (E.D. Mich. May 3, 2021) (*citing Buchholz v. Tanik*, 946 F.3d 855, 870 (6th Cir. 2020)).

9.    NELSON is an individual residing in Washtenaw County, Michigan.

10.    Venue and personal jurisdiction over Defendant I.Q. in this District is proper because I.Q.'s conduct complained of was directed at NELSON, through the use of the U.S. Mail, addressed NELSON in this District, and the underlying contract between NELSON and U.S. BANK TRUST was entered into in this District.

## PARTIES

11.    NELSON is a natural person allegedly obligated to owe the amount of money in I.Q.'s letter to NELSON dated August 25, 2022.  See (Exhibit A).

12.    I.Q. is foreign profit corporation, incorporated under the laws of the State of Washington, with its registered agent in Michigan as its name is CSC-Lawyers Incorporating Service (Company), 2900 West Road Ste. 500, East Lansing, Michigan, 48823.

13.     I.Q. provides debt collection services to the apartment industry.

14.     I.Q. uses the mails in any business the principal purpose of which is the collection of debts.

15.     I.Q.'s income is primarily derived from the collection of past due accounts.

16.     I.Q. regularly collects or attempts to collect directly debts owed or due or asserted to be owed or due another.

17.     I.Q. publicly holds itself out as a "debt collector."

18.     I.Q. is believed not to own, nor has been assigned he rights to, the account identified in the letter dated August 25, 2022. See (Exhibit A).

19.     I.Q. is subject to the Michigan Occupational Code. *See Misleh v. Timothy E. Baxter & Assocs.,* 786 F. Supp. 2d 1330, 1337 (E.D. Mich. 2011) (citations omitted) ("courts have recognized that a person or entity engaged in debt collection activities is either a 'collection agency' under the Occupational Code or a 'regulated person' under the MCPA, but not both.")

**FACTS**

20.     On April 30, 2019, NELSON entered into a lease for a residential property with U.S. Bank Trust Company, North America, as Trustee of the LSF9 Master Participation Trust, by and through its disclosed Agent, WRI Property Management, LLC, for a term of May 1, 2019, to May 31, 2020.  (Exhibit A).

21.    On November 26, 2019, at 12:14 PM, NELSON, and her authorized roommate on the lease, now spouse, provided WRI Property Management, LLC, written notification via email, cmullgrav@resicap.com, that NELSON was terminating the lease effective January 1, 2020.

22.    On November 27, 2019, at 8:35 AM, Chanel Mullgrav, Assistant Property Manager: West/Midwest Region for WRI Property Management, LLC, acknowledge and accepted, in writing, NELSON's termination notification.

23.    On or before December 13, 2019, WRI Property Management, LLC, contacted Victoria Mona, Licensed Realtor, to meet NELSON at the rental unit to conduct a move out assessment.

24.    On December 14-15, 2019, NELSON vacated the rental unit.

25.    Victoria Mona however did not show up at the rental unit.

26.    On December 16, 2019, WRI Property Management, LLC informed NELSON, that on December 18, 2019, Marketplace Homes, which after Plaintiff's counsel searching the Secretary of State website is a d/b/a Trowbridge Realty Corporation, ("MARKETPLACE HOMES"), would become the new property manager of the rental unit.

27.    Shortly thereafter, NELSON contacted MARKETPLACE HOMES, via telephone, and asked about to whom she should return the keys to the rental unit to.

28. MARKETPLACE HOMES informed NELSON that MARKETPLACE HOMES was going to change the rental unit's locks so there was no need at that time to return the keys, but if there was a need for NELSON to return the rental unit's keys, MARKETPLACE HOMES would contact her.

29. MARKETPLACE HOMES did not contact NELSON requesting the return of the rental unit keys, and NELSON relied upon MARKETPLACE HOMES' statement that it would only contact her if MARKETPLACE HOMES needed the rental unit keys.

30. On March 13, 2020, President Trump "proclaim[ed] that the COVID-19 outbreak in the United States constitutes a national emergency, beginning March 1, 2020." https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/

31. Beginning on March 20, 2020, Governor Gretchen Whitmer signed Executive Order 2020-19 which allowed tenants to stay in their rental units during the COVID-19 pandemic even if they were unable to pay their rent, which was followed by subsequent state and federal orders prohibiting evictions during the COVID-19 pandemic.

32. On February 19, 2021, 10:50 AM, Dorothy Gustafson, dorthy@marketplacehomes.com sent an email, Subject 24245 Murray Move out

Instructions, stating in part, "Marketplace Homes has a scheduled move out for you on (3/31/21)."

33.     On March 2, 2021 at 11:59 AM, NELSON, informed Emily Bell via email, Emily.bell@marketplacehomes.com that NELSON had "not occupied 24245 Murray St. house since December of 2019", gave WRI Property Management, LLC "a 30 day notice (see attachment) on November 26, 2019.  Chantel Mullgrav, our direct WRI contact for this property, had accepted my 30 day notice on November 27, 2019 . . . I had finalized my account, paid balances, and planned my move out before your property management company took over this property" . . . "We would really appreciated if you updated your records with the information provided and stop contacting me regarding this matter."

34.     NELSON received a letter from I.Q. dated August 3, 2021.  See (Exhibit B).

35.     The letter from I.Q. dated August 3, 2021, stated in part, "Creditor: HUDSON HOMES MANAGEMENT, LLC (MI)".

36.     The letter from I.Q. dated August 3, 2021, identified the Account # as "0008742431".

37.     The letter from I.Q. dated August 3, 2021, stated in part, "Principal Due: $27,311.10".

38.     The letter from I.Q. dated August 3, 2021, stated in part, "Interest Due: $2,169.92".

39.     The letter from I.Q. dated August 3, 2021, stated in part, "Total Due: $29,481.02".

40.     The letter from I.Q. dated August 3, 2021, stated in part, "If you make a request in writing to this office within 30 days after receiving this notice this office will provide you with the name and address of the original creditor if different from the current creditor."

41.     I.Q.'s letter dated August 3, 2021, stated in part, "Creditor:  HUDSON HOMES MANAGEMENT, LLC (MI)."

42.     The letter from I.Q. dated August 3, 2021, stated in part, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum."

43.     The letter from I.Q. dated August 3, 2021, stated in part, "To pay your account online, please go to our consumer portal at www.iqdata-inc.com"

44.     The letter from I.Q. dated August 3, 2021, was attempting to solicit a payment by Plaintiff towards or in full of the claimed total due of $29,481.02.

45.     The letter from I.Q. dated August 3, 2021, provided, in part, the addresses, "P.O. Box 340, Bothell, Washington 98041-0340 • 21222 30th Drive SE, Suite 120, Bothell, WA 98021-7012".

46.    I.Q. has publicly represented as its "CONTACT INFORMATION" the same PO Box 340, Bothell, WA 98041-0340 address as follows:



https://www.iqdata-inc.com/about-us

47.    Written disputes can be received by I.Q. at PO Box 340, Bothell, WA 98041-0340.

48.    In a letter dated August 23, 2021, addressed to IQ Data International, Inc., Elizabeth provided I.Q., her name, an address in Westland, MI, as her address, that the letter was in regard to "0008742421", that it was a response to the August 3, 2021 communication that "identified the debt as a past due account that was referred to your office from Hudson Homes Management, LL (MI)" sent to her by I.Q. via the U.S. Mail , and that "I do not have any responsibility for the debt you're trying to collect.  If you have good reason to believe that I am responsible for this debt, mail me the documents that make you believe that.  Stop all other communication with me and with this address, and record that I dispute having any obligation for this debt."  (Exhibit C).

49. On August 24, 2021, Elizabeth sent the letter dated August 23, 2021 to I.Q. addressed to P.O. Box 340, Bothell, WA 98041-0349, and a duplicate letter to I.Q. addressed to P.O. Box 39, Bothell, WA 98041-0039.

50. The cost of sending the letter via U.S. Postal Service Certified Mail was $7.00 (seven dollars) for each letter.

51. On August 28, 2021, I.Q. received one of the letters dated August 23, 2021, and on August 30, 2021, received the other letter dated August 23, 2021.

52. Nelson submitted a change of address to the United States Postal Service that beginning July 31, 2021, her mail was to be forwarded to her new residence in Milan, MI.

53. After not having a response from I.Q., and months past, NELSON believed that I.Q. had decided to cease all collection activity, accepted her dispute, and relying on I.Q.'s silence, NELSON took no further action.

54. A year later, I.Q. sent a letter dated August 25, 2022, to NELSON's residence in Milan, Michigan, with an attached document titled "Resident Ledger", and a two-page excerpt of her lease with U.S. BANK TRUST. (Exhibit D).

55. I.Q. purposefully choose to wait a year after NELSON's letter dated August 23, 202, until August 25, 2022, to send to NELSON the letter dated August 25, 2022.

56. I.Q.'s letter dated August 25, 2022, states in part:

RE: Letter of Dispute

Original Creditor: HUDSON HOMES MANAGEMENT, LLC (

     Principal Due:     $27311.10
      Interest Due:     $3617.79
        Total Due:     $30928.89

Dear ELIZABETH DOERR

Our offices are in receipt of your letter of dispute and request for
verification pursuant to 15 U.S.C. 1692g of the Fair Debt Collection Practices
Act.  Please be advised we have contacted our client,
HUDSON HOMES MANAGEMENT, LLC (, who has confirmed the name and address listed
on the account as well as the amount owed.  Listed above is a summary of the
charges on the account and any applicable fees or interest.  Also enclosed are
billing statements provided by our client that confirm the charges.

Should you have any questions regarding this account or if you wish to discuss
payment arrangements, please feel free to contact us at the number listed
below.  We look forward to helping you resolve this matter.

57.    NELSON believed that from the language of I.Q.'s letter dated August

25, 2022, was to solicit a payment from her on the Total Due and to do what the

letter says, "contact us at the number listed below" "if you wish to discuss payment

arrangements".

58.    I.Q.'s letter dated August 25, 2022, stated in part:

This communication from a debt collector is an attempt to collect a debt
and any information obtained will be used for that purpose. Your outstanding
principal balance will accrue interest at a rate of 005.00 percent per annum.
As of the date of this letter, you owe    $30928.89  . Because of interest,
late charges and other charges that may vary from day to day, the amount due
on the day you pay may be greater. Hence, if you pay the amount shown above,
an adjustment may be necessary after we receive your payment, in which event
we will inform you before depositing the payment for collection. For further
information, write the undersigned or call 1-888-248-2509.

59.    NELSON believes from the quoted language above in the previous

paragraph that I.Q. would continue to attempt to collect the amounts I.Q. claimed as

"Due" will continue to add interest if NELSON does not pay the full amount, plus daily interest, and decided to seek out legal counsel.

60.    The second page of I.Q.'s letter dated August 25, 2022, "This is an attempt to collect a debt, and any information obtained will be used for that purpose."

61.    Included with the letter dated August 25, 2022, was a document titled "Resident Ledger".

62.    The document titled "Resident Ledger" enclosed with I.Q.'s letter dated August 25, 2022, does not state that any interest was owed; nor did the pages of the lease that I.Q. also enclosed state that a rate of interest could be applied to the principal amount of the debt.

63.    The letter dated August 25, 2022, states in part, "Listed above is a summary of the charges on the account and any applicable fees or interest.  Also enclosed are billing statements provided by our client that confirm the charges."

64.    I.Q. unilaterally and without its client's authorization added "Interest Due:  $3617.79".

65.    I.Q. unilaterally and without U.S. TRUST BANK's authorization added "Interest Due:  $3617.79".

66.    The amount of claimed "Interest Due:  $3617.79" is a discreate and separate mathematical calculation, not dependent upon any prior mathematical calculation of "Interest Due".

67.     The document titled "Resident Ledger" attached to I.Q.'s letter dated
August 25, 2022, (Exhibit A), stated in part:

**Resident Ledger**



Date: 08/22/2022

| Code | t0008254 | | Property | d4138197 | Lease From | 05/01/2019 |
|------|----------|--|----------|----------|------------|------------|
| Name | Elizabeth Doerr | | Unit | D4138197 | Lease To | 05/31/2020 |
| Address | 24245 Murray St | | Status | Past | Move In | 05/01/2019 |
| | | | Rent | 1950.00 | Move Out | 01/01/2020 |
| City | Clinton Towns, MI 48035 | | Phone (H) | (734) 620-7178 | Phone (W) | |

| Date | Chg Code | Post Month | Description | Charge | Payment | Balance | Chg/Rec |
|------|----------|-----------|-------------|--------|---------|---------|---------|
| 05/01/2019 | SECDEP | 06/2020 | :Posted by QuickTrans (SECDEP) | 1,950.00 | | 1,950.00 | 80000 |
| 05/01/2019 | | 06/2020 | chk# :QuickTrans :Posted by QuickTrans | | 1,950.00 | 0.00 | 50459 |
| 01/01/2020 | SECDEP | 03/2021 | :Security Deposit credit | (1,950.00) | | (1,950.00) | 342520 |
| 06/15/2020 | RENT | 07/2020 | WRI Ledger Bal Transfer (06/2020) :Write Off by Charge Ctrl# 427848 | 1,950.00 | | 0.00 | 99971 |

68.     I.Q. by only providing NELSON a two page except of NELSON's lease
with U.S. BANK TRUST, concealed the fact that the lease did not contain a rate of
interest that could be assessed by the creditor upon an alleged breach.

69.     The monies sought and collected by I.Q. from NELSON were claimed
to be owed under a residential home for NELSON's familial and personal use.

70.     The principal amount of money sought and collected by I.Q from
NELSON were claimed to be in default at the time I.Q.'s first attempted to collect
from NELSON.

71.     The principal amount of money I.Q. sought to collect from NELSON
is any obligation or alleged obligation of a consumer to pay money arising out of a
transaction in which property, is the subject of the transaction are primarily for
personal, family, or household purposes.

72.     NELSON has paid over $200 towards the filing fee in this case for this Court as a matter of law to determine whether I.Q. could unilaterally add and/or seek to collect any amount of interest on the original debtor-creditor contract between NELSON and U.S. BANK TRUST and enter a declaratory judgment and provide injunctive relief to prevent any future attempts by I.Q. to collect interest not legally owed by NELSON, which in turn will decide her FDCPA and MOC claims.

**COUNT I**
**INTEREST CLAIMED AS "DUE"**
**FDCPA VIOLATIONS**

73.     Paragraphs 1-72 are incorporated herein.

74.     Under Michigan contract law, "'Due' means owed or owing to. The word 'due' is often used to signify the present existence of a debt, although to be paid thereafter." *Mich. Chandelier Co. v. Morse*, 297 Mich. 41, 46, 297 N.W. 64, 66 (Mich. 1941).

75.     15 USC 1692f, f(1) provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

76.     15 USC 1692e, e(2)(A), e(5), e(10) provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: * * *

(2) The false representation of—
    (A) the character, amount, or legal status of any debt; or * * *

(5) The threat to take any action that cannot legally be taken . . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt . . . .

77.    I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

78.    I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

79.    I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

80.    I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

81.     I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

82.     I.Q.'s letter dated August 25, 2022, stating "Interest Due. . ." is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

83.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

84.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

85.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

86.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

87.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

88.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

89.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

90.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is unfair as the original creditor-debtor

contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

91.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

92.     I.Q.'s letter dated August 25, 2022, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

93.     I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

94.     I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after

an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

95. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

96. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

97. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

98. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

99. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" implies that unless the principal balance is paid, interest will continue to "accrue interest at a rate of 005.00 percent per annum."

100. I.Q.'s letter dated August 25, 2022, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" creates a false scene of urgency to pay the debt to stop interest being added.

101. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

102. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

103. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is

deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

104. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

105. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

106. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

107. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is

unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

108. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

109. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

110. I.Q.'s letter dated August 25, 2022, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

111. After NELSON's dispute of the debt, sent on August 24, 2021, I.Q. fraudulently concealed from NELSON that neither the original creditor, U.S. BANK

TRUST, or I.Q.'s purported "client, HUDSON HOMES MANAGEMENT, LLC (,"
claimed any interest "Due" or any interest at all, until I.Q. attached to its August 25,
2022 letter the "Resident Ledger".

112. Prior to I.Q.'s August 25, 2022 letter, I.Q. intended NELSON to rely
on as true its statements in its letter dated August 3, 2021, which included, "Interest
Due: $2,169.92", "Total Due: $29,481.02", "Your outstanding principal balance
will accrue interest at a rate of 005.00 percent per annum", "Because of interest . . .
may vary from day to day, the amount due on the day you pay may be greater."

113. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is false as
the original creditor-debtor contract does not contain a rate of interest to be applied
after an alleged breach of the contract.

114. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is false as
the original creditor-debtor contract does not contain a rate of interest to be applied
after an alleged breach of the contract and interest was not "Due" under Michigan
law at the time the letter was sent.

115. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is deceptive
as the original creditor-debtor contract does not contain a rate of interest to be
applied after an alleged breach of the contract.

116. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is deceptive
as the original creditor-debtor contract does not contain a rate of interest to be

applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

117. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

118. I.Q.'s letter dated August 3, 2021, stating "Interest Due. . ." is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

119. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

120. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

121. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is misleading as the original creditor-debtor

contract does not contain a rate of interest to be applied after an alleged breach of the contract.

122. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

123. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

124. I.Q.'s letter dated August 3, 2021, stating "Total Due. . ." as it includes the amount of "Interest Due. . ." claimed is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest was not "Due" under Michigan law at the time the letter was sent.

125. I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

126.    I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

127.    I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

128.    I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

129.    I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

130.    I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is misleading as

the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

131.  I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

132.  I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

133.  I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

134.  I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be

applied after an alleged breach of the contract and interest would not "accrue interest of 005.00 percent per annum" under Michigan law at the time the letter was sent.

135.   I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" implies that unless the principal balance is paid, interest will continue to "accrue interest at a rate of 005.00 percent per annum."

136.   I.Q.'s letter dated August 3, 2021, stating, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" creates a false scene of urgency to pay the debt to stop interest being added.

137.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

138.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is false as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

139. I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is deceptive as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

140. I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is deceptive  as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

141. I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

142. I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is misleading as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

143.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

144.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unfair as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

145.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract.

146.   I.Q.'s letter dated August 3, 2021, stating, "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater" is unconscionable as the original creditor-debtor contract does not contain a rate of interest to be applied after an alleged breach of the contract and interest would not "vary from day to day, the amount due on the day you pay may be greater" under Michigan law at the time the letter was sent.

147. There is no indication that I.Q. will cease attempting to collect impermissible interest.

148. There is no indication that I.Q. will cease adding additional impermissible interest to the subject debt.

149. NELSON has suffered actual damages in disputing the debt via the US Mail.

150. I.Q.'s continued collection attempt, after NELSON's dispute letter, demanding that she pay even more illegal interest is a harm in and of itself.

151. NELSON has suffered actual damages in paying part of the filing fee here to have her rights under the subject contract declared that I.Q. is not permitted to seek interest not provided for in the subject contract in an attempt to end I.Q. impressable collection demands of interest not legally owed.

152. Demanding more interest that what is legally owed presents the harm that an unsophisticated consumer may pay that interest.

153. Demanding more interest that what is legally owed presents the harm that an unsophisticated consumer may rely on that representation as true when making a decision in negotiations with I.Q. to settle their debt.

154. Demanding more interest that what is legally owed is material.

155. I.Q. violated 15 USC 1692e, e(2)(A), e(5), e(10), 1692f, f(1).

# CLASS ALLEGATIONS

156.  NELSON seeks to represent a Class and a Subclass defined as:

**Class**: NELSON, and all persons in Michigan, who during a time period from one-year prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that stated in the letter, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum", and stated an amount of "Interest Due", an amount that was also included in the "Total Due", where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract.

**Subclass**: NELSON, and all persons in Michigan, who during a time period from one-year prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that stated in the letter, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum", and stated an amount of "Interest Due", an amount that was also included in the "Total Due", where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract, and at any time either made a payment above the amount of the "Principal Due" claimed by I.Q., disputed the debt in writing or requested verification of the debt in writing.

157.  Congress when enacting the FDCPA expressly provided that a class action could be brought under the FDCPA.  15 USC 1692k(a)(2)(B).

158.  I.Q. has been sued before on a class basis under the FDCPA, and settled on a class basis, for attempting to collect interest not provided for in the underlying creditor-debtor contract, instrument, or under state law.  E.g. *Esposito v. I.Q. Data*

*International, Inc*, 2:18-cv-00437-JES-NPM (M.D. Fla.); eg *Garcia Galdamez et al. v. I.Q. Data International, Inc.*, 1:15-cv-01605-LMB-JFA (E.D. Va).

159. On information and belief, in 2019, I.Q.'s net worth was approximately $17,400,000.00 (seventeen million four hundred thousand dollars).

160. On information and belief, I.Q. is a volume debt collector and that 1 percent or more of its debt collection business is comprised of attempting to collect debts from persons with a Michigan address.

161. On information and belief, I.Q. has a policy, practice and procedure, to add a 5% per annum rate of interest to the principal amount of the debt irrespective whether the debtor-creditor contract provides a 5% per annum rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, via form letters that claim that interest as being "Due".

162. On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by the original creditor to do so.

163. On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by its client to do so.

164. I.Q. uses form letters, such as those sent to NELSON, that contains the phrases, "Interest Due:", "Total Due:", "Your outstanding principal balance will

accrue interest at a rate of 005.00 percent per annum" and "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater", which form the basis of NELSON's and the putative class claims in Count I under the FDCPA.

165. On information and belief there are more than 40 persons defined in the Class definition above.

166. On information and belief there are more than 40 persons defined in the Subclass definition above.

167. There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

168. The predominate questions are whether I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt regardless if the contract provides a rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, in regard to accounts involving a person living or residing in the State of Michigan, and whether that violates the FDCPA.

169. NELSON will fairly and adequately protect the interests of the Class and Subclass she seeks to have certified as she seeks the same relief actual and statutory damages under the FDCPA, and her claims are common and typical to the Class and Subclass defined herein.

170. NELSON will fairly and adequately protect the interests of the Class and Subclass as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

171. NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions, including class actions brought under the FDCPA, obtaining settlements deemed by state and federal courts to be fair, reasonable and adequate. *Schafer v. Allied Interstate LLC, et. al.,* 17-cv-233 (W.D. Mich. July 1, 2021) (FDCPA); *Soto et. al. v. Great America LLC,* 17 CH 1118 (19th Judicial Circuit Court, Lake County, Illinois, June 18, 2021) (FCRA – Receipt); *Sowles v. Weltman, Weinberg & Reis Co., LPA,* 19-cv-10254 (E.D. Mich. Oct. 23, 2020) (FDCPA); *Pilaraski v. Rent Recover of Better NOI LLC,* 17-cv-8659 (N.D. Ill. Sept. 25, 2019) (FDCPA); *Loveday v. Financial Asset Management Systems, Inc.,* 18-cv-10218 (E.D. Mich. May 24, 2019) (FDCPA); *Dilallo et al. v. Miller and Steeno, P.C., et al.,* 16 C 51 (N.D. Ill. Mar. 16, 2018) (FDCPA); *Patel v. AT&T Services, Inc.*, 15 C 8174 (N.D. Ill. Sept. 20, 2017) (TCPA – Autodialer); *Florence Mussat, M.D., S.C. v. E.S. Medical Supplies and Equipment Inc.,* 16 C 1240 (N.D. Ill. Sept. 13, 2017) (TCPA – Junk Fax); *Tsang v. Zara USA, Inc.*, 15-cv-11160 (N.D. Ill. Nov. 2, 2016) (FCRA – Receipt); *Vasquez v. Zara USA, Inc.,* 15 C 3433 (N.D. Ill. March 8, 2016) (FCRA – Receipt); *Florence Mussat, M.D., S.C. v. Insurance Group of*

*America Holdings, LLC.*, 13 C 7798 (N.D. Ill. May 7, 2015) (TCPA – Junk Fax);

*Krishnan et al. v. Autovest LLC*, 13 C 8654 (N.D. Ill. Mar. 27, 2015) (FDCPA); *Paci*

*v. Elmhurst Auto Werks, LTD,* 14 C 1158 (N.D. Ill. Feb. 2, 2015) (FCRA – Receipt);

*Pursak v. Lumber Liquidators, Inc.,* 12 C 6984 (N.D. Ill Nov. 17, 2014) (FCRA –

Receipt); *Florence Mussat M.D., S.C. v. Betterdoctor, Inc.*, 13 C 8377 (N.D. Ill.

July 10, 2014) (TCPA Junk Fax); *Sanders et. al. v. W&W Wholesale, Inc.*, 11 C

3557 (N.D. Ill. Apr. 11, 2014) (FCRA – Receipt); *Bargains in a Box, Inc.*, 13 C

3964 (N.D. Ill. Mar. 27, 2014) (FCRA – Receipt); *Florence Mussat M.D., S.C. v.*

*Global Healthcare Resource, LLC,* 11 C 7035 (N.D. Ill. Nov. 1, 2013) (TCPA Junk

Fax); *Tang v. Medical Recovery Specialists Inc*., 11 C 2109 (N.D. Ill) (FDCPA);

*Tang v. Pita Inn Inc*, 11 C 3833 (N.D. Ill. May 2, 2012) (FCRA – Receipt); *Balbarin*

*v. North Star Acquisition,* LLC, 10 C 1846 (N.D. Ill. Apr. 12, 2012) (TCPA

Autodialer); *O'Hara v. Medieval Times USA, Inc.*, 3:10-cv-751 (D. N.J. Mar. 6,

2012) (FCRA – Receipt); *Todd v. HB Windows and Doors*, *Inc.*, 10 C 4986 (N.D.

Ill. Aug. 18, 2011) (FCRA – Receipt); *Seppanen v. Krist Oil Co.*, 2:09-cv-195 (W.D.

Mich. Aug. 9, 2011) (FCRA – Receipt); *Vallejo v. National Credit Adjusters,* LLC,

10-cv-103 (N.D. Ind. Nov. 3, 2010) (FDCPA); *Mitchem v. Northstar Location*

*Services,* LLC, 09 C 6711, (N.D. Ill. May 13, 2010) (FDCPA); *Housenkamp v.*

*Weltman, Weinberg & Reis, Co. of Michigan*, Case No. 1:09-cv-10613-TLL-CEB

(E.D. Mich. May 11, 2010) (FDCPA); *Kern v. LVNV Funding, Inc.*, 09 C 2202,

(N.D. Ill. Jan. 21, 2010) (FDCPA); *Prieto et al. v. HBLC, Inc. and Steven J. Fink & Assoc., P.C.*, 08 C 2817 (N.D. Ill. Dec. 15, 2008) (FDCPA); *Dobson v. Asset Acceptance LLC*, 07 C 6203, (assigned as related to 07 C 5967) (N.D. Ill. 2008) (FDCPA); *Horton v. IQ Telecom*, 07 C 2478 (N.D. Ill. May 5, 2008) (FDCPA).

172.   A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

173.   There are no issues of manageability of the proposed Class and Subclass both of which are ascertainable from I.Q.'s records.

174.   NELSON, and the putative Subclass suffered actual damages.

**WHEREFORE,** NELSON requests this Honorable court to enter judgment against I.Q. on Count I as follows:

    A. An award of actual damages under 15 USC 1692k(a)(1) and 15 USC 1692k(a)(2)(B) to NELSON and the Subclass;

    B. An award of statutory damages under 15 USC 1692k(a)(2)(A) and 15 USC 1692k(a)(2)(B) to NELSON, the Class and Subclass;

    C. Reasonable attorney's fees and costs under 15 USC 1692k(a)(3);

D. To certify the proposed Class and Subclass in Count I, with any amendments as required by the Court;

E. Appoint NELSON as the representative for the Class and Subclass;

F. Appoint Mr. Warner as counsel for the proposed Class and Subclass in Count I;

G. And, subject to the Court discretion, award NELSON a reasonable incentive award for serving as the representative for the Class and Subclass.

## COUNT II
## INTEREST CLAIMED AS "DUE"
## MICHIGAN OCCUPATIONAL CODE VIOLATIONS

175. Paragraphs 1-72, 77-154 are incorporated herein.

176. Under Michigan contract law, "'Due' means owed or owing to. The word 'due' is often used to signify the present existence of a debt, although to be paid thereafter." *Mich. Chandelier Co. v. Morse*, 297 Mich. 41, 46, 297 N.W. 64, 66 (Mich. 1941).

177. MCL 339.915a(1)(e) prohibits:

Demanding . . . or collecting or receiving a fee or other compensation from a consumer for collecting a claim, other than a claim owed to the creditor under the provisions of the original agreement between the creditor and debtor.

178.  MCL 339.915(f)(ii) prohibits, "(f) Misrepresenting in a communication with a debtor any of the following: * * * (ii) the legal rights of the . . . debtor."

179.  MCL 339.915(e) prohibits "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt. . . ."

180.  I.Q. violated MCL 339.915a(1)(e), MCL 339.915(f)(ii) and MCL 339.915(e).

181.  I.Q. willfully violated MCL 339.915a(1)(e), MCL 339.915(f)(ii) and MCL 339.915(e) and there was no basis in contract or law for I.Q. to demand in its collection letter interest as being "Interest Due" including that amount in the "Total Due" when the underlying contract did not provide any rate of interest.

182.  MCL 339.916 provides for actual damages or statutory damages in the amount of $50, whichever is greater.

## CLASS ALLEGATIONS

183.  NELSON seeks to represent a Class defined as:

NELSON, and all persons in Michigan, who during a time period from six-years prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that stated in the letter, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum", and stated an amount of "Interest Due", an amount that was also included in the "Total Due", where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract.

184.   I.Q. has been sued before on a class basis under the FDCPA, and settled on a class basis, for attempting to collect interest not provided for in the underlying creditor-debtor contract, instrument, or under state law.  *E.g. Esposito v I.Q. Data International, Inc.*, 2:18-cv-00437-JES-NPM (M.D. Fla.); *e.g. Garcia Galdamez et al v I.Q. Data International, Inc*, 1:15-cv-01605-LMB-JFA (E.D. Va.)

185.   On information and belief, I.Q. is a volume debt collector and that 1 percent or more of its debt collection business is comprised of attempting to collect debts from persons with a Michigan address.

186.   On information and belief, I.Q. has a policy, practice and procedure, to add a 5% per annum rate of interest to the principal amount of the debt irrespective whether the debtor-creditor contract provides a 5% per annum rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, via form letters that claim that interest as being "Due".

187.   On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by the original creditor to do so.

188.   On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by its client to do so.

189.   I.Q. uses form letters, such as those sent to NELSON, that contains the phrases, "Interest Due:", "Total Due:", "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" and "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater", which form the basis of NELSON's and the putative class claims in Count II under the Michigan Occupational Code.

190.   On information and belief there are more than 40 persons defined in the Class definition above.

191.   There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

192.   The predominate questions are whether I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt regardless if the contract provides a rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, in regard to accounts involving a person living or residing in the State of Michigan, and whether that violates the Michigan Occupational Code.

193.   NELSON will fairly and adequately protect the interests of the Class she seeks to have certified as she seeks the same relief actual and statutory damages under the FDCPA, and her claims are common and typical to the Class defined herein.

194.   NELSON will fairly and adequately protect the interests of the Class as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

195.   NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions, including class actions brought under the FDCPA, obtaining settlements deemed by state and federal courts to be fair, reasonable and adequate.

196.   A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

197.   There are no issues of manageability of the proposed Class which is ascertainable from I.Q.'s records.

198.   NELSON, and the putative Class suffered actual damages

**WHEREFORE,** NELSON requests this Honorable court to enter judgment against I.Q. on Count II as follows:

A. An award of actual damages, or $50, whichever is greater to NELSON and each member of the Class;

B. Reasonable attorney's fees and costs under MCL 339.916;

C. To certify the proposed Class in Count II, with any amendments as required by the Court;

D. Appoint NELSON as the representative for the Class;

E. Appoint Mr. Warner as counsel for the proposed Class in Count II;

F. And, subject to the Court discretion, award NELSON a reasonable incentive award for serving as the representative for the Class.

## COUNT III
## FAILURE TO IDENTIFY THE ORIGINAL CREDITOR
## FDCPA VIOLATION

199. Paragraphs 1-72 are incorporated herein.

200. 15 USC 1692g(b) provides, in part:

[i]f the consumer notifies the debt collector in writing within the thirty-day period. . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

201. The legislative history behind Section 1692g(b) provides in part:

This provision will eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. Since the current practice of most debt collectors is to send similar information to consumers, this provision will not result in additional expense or paperwork.

S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.S.C.A.N. 1695, 1699.

202.    I.Q.'s letter dated August 3, 2021, complied with 15 USC 1692g(a)(5) as it contained, "a statement that upon the consumer's written request within the thirty-day period the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor", however after NELSON's timely written dispute, I.Q. did not provide NELSON with the name and address of the original creditor, U.S. BANK TRUST, which is different from "Creditor:  HUDSON HOMES MANAGEMENT, LLC (MI)" as identified in I.Q.'s August 3, 2021 letter, but instead in its August 25, 2022 letter made an identification as follows, "Original Creditor:  HUDSON HOMES MANAGEMENT, LLC (".

## CLASS ALLEGATIONS

203.    NELSON seeks to represent a Class defined as:

**Class**:  NELSON, and all persons in Michigan, who during a time period from one-year prior to the filing of this civil action until the filing of this civil action, after I.Q. receiving a written dispute of the debt or a written request for verification, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, whereas the letter identified solely a property manager as the "Original Creditor" but the original creditor was a different entity.

204.    Congress when enacting the FDCPA expressly provided that a class action could be brought under the FDCPA.  15 USC 1692k(a)(2)(B).

205. On information and belief, in 2019, I.Q.'s net worth was approximately $17,400,000.00 (seventeen million four hundred thousand dollars).

206. On information and belief, I.Q. is a volume debt collector and that 1 percent or more of its debt collection business is comprised of attempting to collect debts from persons with a Michigan address.

207. On information and belief, I.Q. has a policy, practice and procedure, to name only a property manager as the "Creditor" or "Original Creditor" regardless of the name of the entity that was in fact the original creditor.

208. I.Q. uses form letters, such as the letter dated August 25, 2022, sent to NELSON, that contains the phrase "Original Creditor".

209. On information and belief there are more than 40 persons defined in the Class above.

210. There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

211. The predominate questions are whether I.Q. only identifies a property manager as the "Creditor" or "Original Creditor" after a written dispute or written request for verification regardless of the name of the entity that was in fact the original creditor, and whether that violates the FDCPA.

212. NELSON will fairly and adequately protect the interests of the Class she seeks to have certified as she seeks the same relief actual and statutory damages

under the FDCPA, and her claims are common and typical to the Class defined herein.

213.   NELSON will fairly and adequately protect the interests of the Class as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

214.   NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions.

215.   A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

216.   There are no issues of manageability of the proposed Class which is ascertainable from I.Q.'s records.

217.   Nelson, and each class member would have damages for postage in sending the written request for verification or written dispute of the debt to I.Q., but nevertheless was deprived of accurate information regarding who is the original creditor after the class members' dispute.

**WHEREFORE,** NELSON requests this Honorable court to enter judgment against I.Q. on Count III as follows:

A. An award of statutory damages under 15 USC 1692k(a)(2)(A) and 15 USC 1692k(a)(2)(B);

B. Reasonable attorney's fees and costs under 15 USC 1692k(a)(3);

C. To certify the proposed Class in Count III, with any amendments as required by the Court;

D. Appoint NELSON as the representative for the Class;

E. Appoint Mr. Warner as counsel for the proposed Class in Count III;

F. And, subject to the Court discretion, award NELSON a reasonable incentive award for serving as the representative for the Class.

## COUNT IV
## DELARATORY JUDGMENT

218. Paragraphs 1-72 are incorporated herein.

219. Count III seeks to declare the rights and other legal relations that I.Q. claims it has in regard to demanding interest as "Due", and seeking to collect that "Interest", under the original debtor-creditor contracts of NELSON and the putative class members that do not provide for any rate of interest to be applied upon an alleged breach for the contract.

220. As to NELSON, I.Q. has unilaterally added an amount of "Interest Due: $3617.79" to the principal amount of the debt it claims NELSON owes, and did so

without the original creditor U.S. BANK TRUST contract with NELSON providing a rate of interest to be due upon a breach of the contract.

221.    As to NELSON, I.Q. has unilaterally added an amount of "Interest Due: $3617.79" to the principal amount of the debt it claims NELSON owes, and did so without any authority under Michigan law to claim the amount of interest being due at the time I.Q.'s letter dated August 25, 2022, was sent to NELSON.

222.    NELSON seeks this Court to enter a Declaratory Judgment under 28 U.S.C. § 2201 and MCL 339.916(1) to declare the rights and other legal relations in regard to whether I.Q. can collect the "Interest Due" amount I.Q. has unilaterally added under the original creditor-debtor contract between NELSON and U.S. BANK TRUST, does not contain a rate of interest to be assessed upon an alleged breach of the contract, and include that amount in the "Total Due".

223.    NELSON seeks this Court to enter a Declaratory Judgment on behalf of a Class defined herein under 28 U.S.C. § 2201, Fed. R. Civ. P. 23(b)(2), MCL 339.916(1), to declare the rights and other legal relations in regard to whether I.Q. can collect the "Interest Due" amount I.Q. has unilaterally added under the original creditor-debtor contract between the creditor and the debtor does not contain a rate of interest to be assessed upon an alleged breach of the contract, and include that amount in the "Total Due".

224.   An actual controversy exists given I.Q.'s continued attempts to collect

an amount of interest informing the debtor via form letters that there is "Interest

Due" and that "Your outstanding principal balance will accrue interest at a rate of

005.00 percent per annum."

## CLASS ALLEGATIONS

225.   NELSON seeks to represent a Class defined as:

NELSON, and all persons in Michigan, who during a time period from six
years to the filing of this civil action until I.Q. ceases its practice complained
of unilaterally adding an amount of "Interest Due" to the principal amount,
were sent a letter from I.Q. Data International, Inc., and the letter was not
returned to Defendant as undeliverable, that stated in the letter, "Your
outstanding principal balance will accrue interest at a rate of 005.00 percent
per annum", and stated an amount of "Interest Due", an amount that was also
included in the "Total Due", where Defendant's records did not contain a
contract that expressly provided for a rate of interest of 5% per annum, or
more, to be assessed upon an alleged breach of the original creditor-debtor
contract, and the person did not pay an amount over the principal amount
stated in I.Q.'s letters.

226.   This Class is being brought under Rule 23(b)(2).

227.   On information and belief, I.Q. is a volume debt collector and that 1

percent or more of its debt collection business is comprised of attempting to collect

debts from persons with a Michigan address.

228.   On information and belief, I.Q. has a policy, practice and procedure, to

add a 5% per annum rate of interest to the principal amount of the debt irrespective

whether the debtor-creditor contract provides a 5% per annum rate of interest to be

applied upon a breach, and seeks to collect that added amount of interest, via form

letters that claim that interest as being "Interest Due" and including that amount in the "Total Due".

229.   On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by the original creditor to do so.

230.   On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by its client to do so.

231.   I.Q. uses form letters, such as those sent to NELSON, that contains the phrases, "Interest Due:", "Total Due:", "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" and "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater".

232.   On information and belief there are more than 40 persons defined in the Class above.

233.   There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

234.   The predominate questions are whether I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt regardless if the contract provides a rate of interest to be applied upon a breach, and

seeks to collect that added amount of interest, in regard to accounts involving a person living or residing in the State of Michigan.

235.   NELSON will fairly and adequately protect the interests of the Class she seeks to have certified as she seeks the same equitable relief.

236.   NELSON will fairly and adequately protect the interests of the Class as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

237.   NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions, including class actions brought under the FDCPA, obtaining settlements deemed by state and federal courts to be fair, reasonable and adequate.

238.   A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

239.   There are no issues of manageability of the proposed Class which is ascertainable from I.Q.'s records.

## PRAYER FOR RELIEF

**WHEREFORE,** NELSON requests this Honorable court to enter a Declaratory Judgment against I.Q. on Count IV as follows:

A. Declare that I.Q. cannot add interest to the principal amount claimed due to be owed in regard to the contract between NELSON and U.S. BANK TRUST;

B. Declare that I.Q. cannot add interest to the principal amount claimed due to be owed in regard to the respective contracts of the putative class members;

C. To certify the proposed Class in Count IV, with any amendments as required by the Court;

D. Appoint NELSON as the representative for the Class;

E. Appoint Mr. Warner as counsel for the proposed Class in Count IV;

F. Costs;

G. Reasonable attorney's fees and costs incurred in connection with the action under MCL 339.916;

H. And, subject to the Court discretion, award NELSON a reasonable incentive award for serving as the representative for the Class.

## COUNT V
## PERMANENT INJUCTION

240.  Paragraphs 1-72 are incorporated herein

241.  In Michigan, an injunction is considered "historical equitable relief." *Lamphere Sch. v. Lamphere Fed'n of Teachers*, 400 Mich. 104, 107, 252 N.W.2d 818, 819 (Mich. 1977).

242.  MCL 339.916(1) expressly permits an action for equitable relief.

243.  In Michigan, an entity may not unilaterally add interest of 5% per annum to a contract's principal amount claimed to be owed, and claim that amount of interest to be "Due" in a collection letter, when no rate of interest is provided for in landlord-tenant contracts to be assessed after an alleged breach.

## CLASS ALLEGATIONS

244.  NELSON seeks to represent a Class defined as:

NELSON, and all persons in Michigan, in which I.Q. has been retained to collect a debt, or is attempting is attempting to collecting a debt, where I.Q.'s records does not contain a contract that expressly provided for a rate of interest to be assessed upon an alleged breach of the original creditor-debtor contract.

245.  This Class is being brought under Fed. R. Civ. P. 23(b)(2).

246.  On information and belief, I.Q. is a volume debt collector and that 1 percent or more of its debt collection business is comprised of attempting to collect debts from persons with a Michigan address.

247. On information and belief, I.Q. has a policy, practice and procedure, to add a 5% per annum rate of interest to the principal amount of the debt irrespective whether the debtor-creditor contract does provides a 5% per annum rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, via form letters that claim that interest as being "Due".

248. On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by the original creditor to do so.

249. On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by its client to do so.

250. I.Q. uses form letters, such as those sent to NELSON, that contains the phrases, "Interest Due:", "Total Due:", "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" and "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater".

251. On information and belief there are more than 40 persons defined in the Class above in paragraph 225.

252. There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

253.   The predominate questions are whether I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt regardless if the contract provides a rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, in regard to accounts involving a person living or residing in the State of Michigan.

254.   NELSON will fairly and adequately protect the interests of the Class she seeks to have certified as she seeks the same equitable relief.

255.   NELSON will fairly and adequately protect the interests of the Class as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

256.   NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions, including class actions brought under the FDCPA.

257.   A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

258.   There are no issues of manageability of the proposed Class.

## PRAYER FOR RELIEF

**WHEREFORE,** NELSON requests this Honorable court to enter an Injunction against I.Q. on Count V as follows:

A. Permanently enjoin I.Q. from adding interest to the principal amount claimed due to be owed in regard to the contract between NELSON and U.S. BANK TRUST;

B. Permanently enjoin I.Q. from adding interest to the principal amount claimed due to be owed in regard to the respective contracts of the putative class members;

C. To certify the proposed Class in Count V, with any amendments as required by the Court;

D. Appoint NELSON as the representative for the Class;

E. Appoint Mr. Warner as counsel for the proposed Class in Count V;

F. Costs;

G. Reasonable attorney's fees and costs incurred in connection with the action under MCL 339.916;

H. And, subject to the Court discretion, award NELSON a reasonable incentive award for serving as the representative for the Class.

## COUNT VI
## DISCOURAGEMENT

259. Paragraphs 1-72 are incorporated herein.

260. Those victims who relied on I.Q.'s false statement that existed "Interest Due" and paid an amount of interest above the principal amount of the debt are entitled to monetary restitution.

261. Michigan law recognizes that "'disgorgement of a wrongdoer's ill-gotten gain'" are proper damages that are recoverable to a breach of contract victim, as "'Courts impose restitution when it is determined as a matter of justice and equity that the wrongdoer should be required to pay for the benefit derived.'" *Dennis De Long v. Palm Beach Polo Holdings*, No. 284444, 2010 Mich. App. LEXIS 1178, at *8 (Ct. App. June 24, 2010) (*quoting* 2 Michigan Law of Damages and Other Remedies, § 25.1, 25-1, 25-2).

262. Here I.Q. breached the original creditors' respective contracts with NELSON and each putative class member that did not contain a rate of interest to be imposed upon a breach of contract, when I.Q. demanded additional "Interest Due" beyond the principal amount.

263. Here I.Q. breached the original creditors' respective contracts with NELSON and each putative class member that did not contain a rate of interest to be imposed upon a breach of contract, when it demanded additional "Interest Due"

beyond the principal amount and at the time the putative class members paid the interest, no interest was due under Michigan law.

## CLASS ALLEGATIONS

264.    NELSON seeks to represent a Class defined as:

NELSON, and all persons in Michigan, who during a time period from six-years prior to the filing of this civil action until the filing of this civil action, paid I.Q. monies above the principal amount of the debt, where I.Q's records did not contain a contract that expressly provided for a rate of interest.

265.    On information and belief, I.Q. is a volume debt collector and that 1 percent or more of its debt collection business is comprised of attempting to collect debts from persons with a Michigan address.

266.    On information and belief, I.Q. has a policy, practice and procedure, to add a 5% per annum rate of interest to the principal amount of the debt irrespective whether the debtor-creditor contract provides a 5% per annum rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, via form letters that claim that interest as being "Due".

267.    On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by the original creditor to do so.

268.    On information and belief, I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt, without being authorized by its client to do so.

269. I.Q. uses form letters, such as those sent to NELSON, that contains the phrases, "Interest Due:", "Total Due:", "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum" and "Because of interest . . . may vary from day to day, the amount due on the day you pay may be greater".

270. On information and belief there are more than 40 persons defined in the Class above.

271. There are questions of law and fact common to each class that predominate over any questions affecting only individual class members.

272. The predominate questions are whether I.Q. has a policy, practice and procedure, to add 5% per annum rate of interest to the principal amount of the debt regardless if the contract provides a rate of interest to be applied upon a breach, and seeks to collect that added amount of interest, in regard to accounts involving a person living or residing in the State of Michigan.

273. NELSON will fairly and adequately protect the interests of the Class she seeks to have certified.

274. NELSON will fairly and adequately protect the interests of the Class as she has assisted counsel in bringing forth this civil action, communicates with her counsel, and is willing to participate in discovery, settlement conferences, and going to Court as needed.

275. NELSON has retained Curtis C. Warner, who is counsel experienced in handling class actions.

276. A class action is superior method for the fair and efficient adjudication of this controversy as most class members do not know that their rights are being violated by I.Q., and with cases brought as individual matters I.Q. will vigorously litigate those cases.

277. There are no issues of manageability of the proposed Class which is ascertainable from I.Q.'s records.

## PRAYER FOR RELIEF

**WHEREFORE,** NELSON requests this Honorable court to enter a Judgment against I.Q. on Count VI as follows:

A. Actual damages in the amount of monies that the class members paid;

B. To certify the proposed Class in Count VI, with any amendments as required by the Court;

C. Appoint NELSON as the representative for the Class;

D. Appoint Mr. Warner as counsel for the proposed Class in Count VI;

E. Costs;

F. Attorney's fees under the common fund doctrine;

G. And, subject to the Court discretion, award NELSON a

reasonable incentive award for serving as the representative for

the Class.

Respectfully Submitted,

Dated: 11/9/22

/s/ Curtis C. Warner
John Evanchek, Esq. P66157
Curtis C. Warner, Esq. P59915 (*Of Counsel*)
Kelley and Evanchek, PC
43695 Michigan Ave.
Canton, Michigan 48188
(734) 397-4540
John@kelawpc.com
Cwarner@warner.legal