UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON,
individually and on behalf of similarly
situated persons defined herein,

    Plaintiff,

v.

I.Q. DATA INTERNATIONAL, INC.,

    Defendant.
_____/

Case No. 22-12710

F. Kay Behm
United States District Judge

### OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO CERTIFY A QUESTION TO THE MICHIGAN SUPREME COURT (ECF NO. 16)

**I.    INTRODUCTION**

This case is before the court on Plaintiff Elizabeth Nelson's ("Nelson") motion to certify a question to the Michigan Supreme Court. Nelson filed her complaint on November 9, 2022, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and other state statutes, on behalf of herself and all others similarly situated.[1] (ECF No. 1). Specifically, Plaintiff argues that Defendant I.Q. Data International ("I.Q.") has falsely claimed "Interest Due," when the landlord-

---

[1] This case was initially before District Judge Laurie J. Michelson, but was reassigned to the undersigned on February 6, 2023.

tenant agreement between Nelson and her original creditor "did not provide for any rate of interest to be applied upon an alleged breach of the agreement, and Michigan law does not support any 'Interest Due' at the time of I.Q.'s demand for payments." *Id.*, PageID.1.

On January 20, 2023, Nelson filed a motion to certify a question to the Michigan Supreme Court pursuant to Eastern District of Michigan Local Rule 83.40 and Michigan Court Rule 7.308(A)(2)(a). (ECF No. 16). Nelson argues that the relevant question presents an unsettled issue of state law, and the answer will resolve the merits of this case. *Id.*, PageID.205. On February 10, 2023, I.Q. filed a notice that they "stipulate to and join Plaintiff's motion to certify." (ECF No. 18). However, for the reasons stated below, the court **DENIES** Nelson's motion.

II.   FACTUAL BACKGROUND

This case stems from a landlord-tenant dispute over a rental property. The relevant facts are gleaned from Nelson's complaint. (ECF No. 1). On April 30, 2019, Nelson entered into a lease for the subject rental property with "U.S. Bank Trust Company, North America, as Trustee of the LSF9 Master Participation Trust, by and through its disclosed Agent, WRI Property Management, LLC." *Id.*, PageID.5. The term of the lease was to be from May 1, 2019 until May 31, 2020. *Id.* On November 26, 2019, Nelson emailed her landlord to notify them of her

intent to terminate the lease, effective January 1, 2020. *Id.*, PageID.6. Her termination notification was acknowledged and accepted, in writing, on November 27, 2019. *Id.* On December 14-15, 2019, Nelson vacated the rental unit. *Id.* On December 16, 2019, Nelson was notified that, as of December 18, 2019, Marketplace Homes ("Marketplace") would become the new property manager of the subject rental property. *Id.* Nelson subsequently contacted Marketplace to inquire about returning the keys to the rental unit. *Id.* Marketplace informed her they were changing the locks so there would be no need to return the keys, but they would contact her if anything changed. *Id.*, PageID.7. Nelson alleges Marketplace never asked her to return the keys. *Id.*

On February 19, 2021, an employee of Marketplace sent Nelson an email "Subject 24245 Murray Move out Instructions, stating in part, 'Marketplace Homes has a scheduled move out for you on (3/31/21).'" *Id.*, PageID.8. On March 2, 2021, Nelson emailed Marketplace to inform them that she had "not occupied 24245 Murray St. house since December of 2019," she had given WRI Property Management 30 days notice on November 26, 2019, which was accepted on November 27, 2019, and "had finalized [her] account, paid balances, and planned [her] move out" before Marketplace took over the property. *Id.* Nelson's email

3

also stated "[w]e would really appreciated [sic] if you updated your records with the information provided and stop contacting me regarding this matter." *Id.*

Several months later, Nelson received a letter from I.Q. dated August 3, 2021, seeking to collect an outstanding debt, which stated "Creditor: HUDSON HOMES MANAGEMENT, LLC (MI)" and listed the following balances: "Principal Due: $27,311.10," "Interest Due: $2,169.92," "Total Due: $29,481.02." *Id.*, PageID.8-9.  The letter also noted "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum." *Id.*, PageID.9.  Nelson responded on August 23, 2021, in a letter stating:

> I do not have any responsibility for the debt you are trying to collect. If you have good reason to believe that I am responsible for this debt, mail me the documents that make you believe that.  Stop all other communication with me and with this address, and record that I dispute having any obligation for this debt.

*Id.*, PageID.10.

Nelson argues that "[a]fter not having a response from I.Q., and months past [sic], NELSON believed that I.Q. had decided to cease all collection activity, accepted her dispute, and relying on I.Q.'s silence, NELSON took no further action." *Id.*, PageID.11.  However, I.Q. sent her an additional letter on August 25, 2022, again attempting to solicit payment on the underlying debt.  *Id.*, PageID.12.  This letter added a section listing: "Interest Due: $3617.79." *Id.*, PageID.13.  I.Q.'s

4

letter also included a two-page excerpt from Nelson's lease with her original landlord. *Id.* Nelson argues that this lease "did not contain a rate of interest that could be assessed by the creditor upon an alleged breach." *Id.*

Nelson brought the present action seeking to "determine whether I.Q. could unilaterally add and/or seek to collect any amount of interest on the original debtor-creditor contract between NELSON and U.S. BANK TRUST and enter a declaratory judgment and provide injunctive relief to prevent any future attempts by I.Q to collect interest not legally owed by NELSON." *Id.*, PageID.15. Nelson raises claims for violations of the FDCPA (Counts I, III) and the Michigan Occupational Code (Count II), for a declaratory judgment (Count IV) and a permanent injunction (Count V), and for disgorgement[2] (Count VI).

### III. ANALYSIS

When presented with an issue concerning the interpretation of a state law, a federal court will normally "make an *Erie* guess to determine how [a state supreme court], if presented with the issue, would resolve it." *In re Nat'l Prescription Opiate Litig.*, No. 22-3750, 2023 WL 5844325, at *4 (6th Cir. Sept. 11, 2023) (citing *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358-59

---

[2] Plaintiff's complaint lists count VI as "discouragement," but, given the allegations, it appears this is a claim for disgorgement. (ECF No. 1, PageID.58).

5

(6th Cir. 2013)). "If, however, that issue is novel or unsettled, a federal court has the discretion to request that a state's highest court provide the definitive state-law answer through certification." *Id.* (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). Not every unsettled question of state law will be certified to the state supreme court and, in general, federal courts should "not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Smith v. Joy Techs., Inc.*, 828 F.3d 391, 397 (6th Cir. 2016).

Certification is governed by Eastern District of Michigan Local Rule 83.40, which states "upon motion or after a hearing ordered by the Judge *sua sponte*, the Judge may certify an issue for decision to the highest Court of the State whose law governs its disposition." Michigan Court Rule 7.308(2) governs certification to the Michigan Supreme Court, and similarly states "[w]hen a federal court, another state's appellate court, or a tribal court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Court." Mich. Ct. R. 7.308(2)(a).

Consistent with the governing law, this court must first determine whether the question presented in Nelson's motion is one of "novel or unsettled" state law. Plaintiff seeks to certify the following question:

> Whether MCL 600.6013(8), a subsection of the Interest on Money Judgement statute, applies to a contract without a stated rate of interest which grants the trail [sic] court the authority to award an amount of prejudgment interest, calculated from the date of the filing of the civil action, or whether MCL 438.31, Michigan's usury statute, applies to such a contract and its 5% rate of interest begins accruing on the date in which the contract was breached thereby categorizing such an amount interest to be deemed due and owing regardless of whether a judgment is ever obtained?

(ECF No. 16, PageID.205).  This question, involving which statute to apply when a contract does not provide a specific rate of interest, appears to not yet have been addressed by either the Michigan Supreme Court or a lower Michigan court of appeals.  *See Huff v. Velo Assoc.*, No. 17-13556 (E.D. Mich. Feb. 13, 2019) (Cox, J.) (finding similar claims "raise novel or unsettled issues of state law.").  Nelson and I.Q. also maintain that an answer to this question would resolve the merits of Nelson's claims.

However, the court is not persuaded that certification is appropriate at this time.  Certification to the Michigan Supreme Court is rare in this district and tends to be utilized only where the question is one that will have an immediate and widespread impact.  *See, e.g., In re Certified Questions From United States Dist. Ct., W. Dist. of Michigan, S. Div.*, 506 Mich. 332, 337 (2020) (certifying questions related to the constitutional and legal authority of Michigan's Governor to issue COVID-19 public health orders).  Federal courts often decline to certify even novel

7

questions to a state court where state "law provides well-established principles to govern the outcome of the case." *Detroit Ent., LLC v. Am. Guarantee & Liab. Ins. Co.*, No. 21-CV-10661, 2022 WL 982232, at *2 (E.D. Mich. Mar. 30, 2022). In this case, the court may utilize the well-established principles of statutory interpretation, as well as comparisons between the facts of this case and other cases applying either of the relevant statutory provisions, to determine how the Michigan Supreme Court, "if presented with the issue, would resolve it." *In re Nat'l Prescription Opiate Litig.*, 2023 WL 5844325, at *4. Because "federal courts are fully equipped to address state law matters, even when there is a dearth of state law authority," the court denies Plaintiff's motion. *Coulter-Owens v. Time, Inc.*, No 12-CV-14390, 2016 WL 612690, at *6 (E.D. Mich. Feb 16, 2016), *aff'd* 695 F. App'x 117 (6th Cir. 2017).

### IV.   CONCLUSION

For the reasons stated above, the court is not convinced that certification to the Michigan Supreme Court is necessary to fully determine the outcome of this case. However, the court is not foreclosing the possibility that, following further discovery and motion practice, certification may become necessary. As such, Plaintiff's motion to certify is **DENIED** without prejudice.

8

**SO ORDERED**.

Date: September 29, 2023        s/ F. Kay Behm
                                F. Kay Behm
                                United States District Judge