UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON, individually and
on behalf of similarly situated persons,

Case No. 22-12710

     Plaintiffs,

v.

F. Kay Behm
United States District Judge

I.Q. DATA INTERNATIONAL, INC.,

     Defendant.

_____ /

## OPINION AND ORDER DENYING DEFENDANT'S MOTION
## FOR JUDGMENT ON THE PLEADINGS (ECF No. 36)

This case is before the court on Defendant I.Q. Data International, Inc.'s

("I.Q." or "I.Q. Data") motion for judgment on the pleadings (ECF No. 36).  Plaintiff

Elizabeth Nelson ("Nelson") filed this lawsuit on behalf of herself and all other

similarly situated persons on November 9, 2022, alleging I.Q. violated the Fair

Debt Collection Practices Act (FDCPA) (Count I, Count III) and the Michigan

Occupational Code (MOC) (Count II), and seeking a declaratory judgment (Count

IV), a permanent injunction (Count V), and disgorgement[1] (Count VI).  ECF No. 1.

Specifically, Nelson alleges that I.Q. "improperly seeks to add a 5% per annum

---

[1] Count VI seeks "discouragement," but the court assumes this is meant to say
"disgorgement," as it is based on "disgorgement of a wrongdoer's ill-gotten gain" under
Michigan law.  ECF No. 1, PageID.58.

rate of interest to the principal amount of the debt, regardless of whether the creditor-debtor contract at issue (here, a lease) provided for such an interest rate to be applied upon any breach."  ECF No. 36, PageID.361.

On January 20, 2023, Nelson filed a motion to certify the key question in this case to the Michigan Supreme Court, pursuant to Eastern District of Michigan Local Rule 83.40 and Michigan Court Rule 7.308(A)(2)(a).  ECF No. 16.  On September 29, 2023, the court denied Nelson's motion, finding that "certification to the Michigan Supreme Court is [not] necessary to fully determine the outcome of this case."  ECF No. 20, PageID.231.  I.Q. filed the present motion on April 1, 2024, seeking to have the court resolve this key question and grant judgment as a matter of law in their favor pursuant to Fed. R. Civ. P. 12(c).  ECF No. 36.  Nelson filed a response on April 17, 2024, and I.Q. filed a reply on May 1, 2024.  ECF Nos. 40, 41.  The court held a hearing on June 18, 2024, and both parties participated in oral argument.  *See* ECF No. 43.  As noted at that hearing, this court held its decision on Defendant's motion due to several ongoing discovery disputes in this case before Magistrate Judge Stafford, and warned the parties that they could not circumvent or abuse the discovery process before the Magistrate Judge while this motion was pending.  The court therefore informed the parties that no decision would be issued on this motion until those issues were resolved or Judge Stafford

issued an order regarding possible sanctions.  Judge Stafford has now issued a

report and recommendation on discovery sanctions and recommending default

judgment against I.Q. Data (ECF No. 63), which this court will address in a

separate opinion and order.

Considering all of the parties' arguments, the court **DENIES** I.Q.'s motion for

judgment on the pleadings.

## I.   FACTUAL BACKGROUND

The relevant factual background of this case was described in detail in the

court's Opinion and Order denying Plaintiff's motion to certify a question to the

Michigan Supreme Court, issued on September 29, 2023.  ECF No. 20.  That

section is reproduced here, in relevant part:

> This case stems from a landlord-tenant dispute over a
> rental property.  The relevant facts are gleaned from
> Nelson's complaint.  (ECF No. 1).  On April 30, 2019,
> Nelson entered into a lease for the subject rental
> property with "U.S. Bank Trust Company, North America,
> as Trustee of the LSF9 Master Participation Trust, by and
> through its disclosed Agent, WRI Property Management,
> LLC." *Id.*, PageID.5.  The term of the lease was to be
> from May 1, 2019 until May 31, 2020. *Id.*  On November
> 26, 2019, Nelson emailed her landlord to notify them of
> her intent to terminate the lease, effective January 1,
> 2020. *Id.*, PageID.6.  Her termination notification was
> acknowledged and accepted, in writing, on November
> 27, 2019. *Id.*  On December 14-15, 2019, Nelson vacated
> the rental unit. *Id.*  On December 16, 2019, Nelson was
> notified that, as of December 18, 2019, Marketplace

3

Homes ("Marketplace") would become the new property manager of the subject rental property. *Id.* Nelson subsequently contacted Marketplace to inquire about returning the keys to the rental unit. *Id.* Marketplace informed her they were changing the locks so there would be no need to return the keys, but they would contact her if anything changed. *Id.*, PageID.7. Nelson alleges Marketplace never asked her to return the keys. *Id.*

On February 19, 2021, an employee of Marketplace sent Nelson an email "Subject 24245 Murray Move out Instructions, stating in part, 'Marketplace Homes has a scheduled move out for you on (3/31/21).'" *Id.*, PageID.8. On March 2, 2021, Nelson emailed Marketplace to inform them that she had "not occupied 24245 Murray St. house since December of 2019," she had given WRI Property Management 30 days notice on November 26, 2019, which was accepted on November 27, 2019, and "had finalized [her] account, paid balances, and planned [her] move out" before Marketplace took over the property. *Id.* Nelson's email also stated "[w]e would really appreciated [sic] if you updated your records with the information provided and stop contacting me regarding this matter." *Id.*

Several months later, Nelson received a letter from I.Q. dated August 3, 2021, seeking to collect an outstanding debt, which stated "Creditor: HUDSON HOMES MANAGEMENT, LLC (MI)" and listed the following balances: "Principal Due: $27,311.10," "Interest Due: $2,169.92," "Total Due: $29,481.02." *Id.*, PageID.8-9. The letter also noted "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum." *Id.*, PageID.9. Nelson responded on August 23, 2021, in a letter stating:

> I do not have any responsibility for the debt
> you are trying to collect.  If you have good
> reason to believe that I am responsible for this
> debt, mail me the documents that make you
> believe that.  Stop all other communication
> with me and with this address, and record that
> I dispute having any obligation for this debt.

*Id.*, PageID.10.

> Nelson argues that "[a]fter not having a response from
> I.Q., and months past [sic], NELSON believed that I.Q.
> had decided to cease all collection activity, accepted her
> dispute, and relying on I.Q.'s silence, NELSON took no
> further action." *Id.*, PageID.11.  However, I.Q. sent her
> an additional letter on August 25, 2022, again
> attempting to solicit payment on the underlying debt.
> *Id.*, PageID.12.  This letter added a section listing:
> "Interest Due: $3617.79." *Id.*, PageID.13.  I.Q.'s letter
> also included a two-page excerpt from Nelson's lease
> with her original landlord.  *Id.*  Nelson argues that this
> lease "did not contain a rate of interest that could be
> assessed by the creditor upon an alleged breach." *Id.*

ECF No. 20, PageID.225-28.

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)

may be brought "[a]fter the pleadings are closed – but early enough not to delay

trial."  Fed. R. Civ. P. 12(c).  Motions under Rule 12(c) are typically analyzed under

the same standard as motions to dismiss under Rule 12(b)(6).  *Tucker v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 549-50 (6th Cir. 2008).  As such, "all well-

pleaded material allegations … of the opposing party must be taken as true, and

the motion may be granted only if the moving party is nevertheless clearly

entitled to judgment." *Id.* (citing *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d

577, 581 (6th Cir. 2007)).  The complaint need only allege "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007).  While the allegations included in the complaint are the

primary focus of a Rule 12(c) motion, "matters of public record, orders, items

appearing in the record of the case, and exhibits attached to the complaint [] also

may be taken into account." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir.

2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## III.   ANALYSIS

Nelson's claims under the FDCPA and corresponding MOC argue that I.Q.'s

attempts to collect "interest due," specifically interest "accru[ing] [] at a rate of

005.00 percent per annum" were false, unfair, unconscionable, deceptive, and

misleading, because the underlying lease agreement between Nelson and U.S.

Bank Trust did "not provide for interest to be added to the principal amount of

the debt after an alleged breach" and I.Q. otherwise has no legal right to collect

this interest under Michigan law.  ECF No. 40, PageID.394; *see also* ECF No. 1,

PageID.16-30.  The FDCPA generally prohibits the use of "false, deceptive, or

misleading representation or means in connection with the collection of any debt" and the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligations) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. §§ 1692e, f(1).  Section 1692e of the FDCPA prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt," making a "threat to take any action that cannot legally be taken," or using any "false representation or deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(2)(A), (5), (10).  Section 915a of the MOC similarly prohibits "[d]emanding . . . or collecting or receiving a fee or other compensation from a consumer for collecting a claim, other than a claim owed to the creditor under the provisions of the original agreement between the creditor and debtor."  Mich. Comp. L. § 339.915a(1)(e).  Section 915(f)(2) of the MOC prohibits "[m]isrepresenting in a communication with a debtor any of the following . . . (ii) the legal rights of the . . . debtor," and section 915(e) prohibits "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt . . . ."  Mich. Comp. L. § 339.915(e), (f)(2)(ii).

Neither party disputes that the original lease agreement between Nelson and U.S. Bank Trust did *not* contain any stated rate of interest to be added to the

principal after a breach.  As such, if the court finds that Michigan law did *not*

authorize I.Q. to collect 5% interest on the underlying amount, their inclusion of

the interest rate in the letters sent to Nelson would be a "false representation of .

. . the character, amount, or legal status of any debt," as well as an "inaccurate . . .

statement or claim in a communication to collect a debt" in violation of both the

FDCPA and the MOC.  The fundamental dispute the court must resolve at this

stage in the proceedings is whether Mich. Comp. L. § 438.31, or any other

relevant statute, authorized I.Q. to collect a statutory 5% interest rate on the

underlying debt prior to the filing of any civil complaint.  *See* ECF No. 41,

PageID.425.

I.Q.'s motion asks the court to enter judgment in their favor because

Michigan's usury statute, Mich. Comp. L. § 438.31, creates an interest rate at 5%

per annum from the date that a party defendant breached the contract until final

judgment, which they argue applies to all contracts without a written, stated rate

of interest.  ECF No. 36, PageID.373 ("MCL 438.31 provides that where parties to a

contract do not stipulate to a rate of interest due on a debt owed in writing, the

rate shall be 5 percent and the accrual of interest begins on the date the debt first

became due.").  The court, like the parties, did not find any cases from the

Michigan Supreme Court directly addressing the question of whether Mich.

8

Comp. L. § 438.31 can be used by private parties to offensively apply a default 5%

prejudgment interest rate against a party allegedly in breach when a contract

does not contain another stated rate.

In diversity cases, this court is required to apply state law in accordance

with the controlling decisions of the Michigan Supreme Court.  *NAS Sur. Grp. v.*

*Cooper Ins. Ctr., Inc.,* 617 F. Supp. 2d 581 (W.D. Mich. 2007); *Erie R.R. Co. v.*

*Tompkins, 304 U.S. 64 (1938); Bailey Farms, Inc. v. NOR-AM Chem. Co.,* 27 F.3d

188, 191 (6th Cir. 1994).  If the state Supreme Court has not yet addressed the

issue presented, this court must predict how it would rule, by looking to "all

available data," including state appellate decisions.  *Safeco Ins. Co. of Am. v. CPI*

*Plastics Grp., Ltd.,* 625 F. Supp. 2d 508 (E.D. Mich. 2008); *Kingsley Assocs., Inc. v.*

*Moll Plastic Crafters, Inc.,* 65 F.3d 498, 507 (6th Cir. 1995).

A.   <u>Relevant Michigan Statutes Regarding Usury and Interest on</u>
     <u>Judgments</u>

First, Michigan's usury laws set a maximum rate of 5% interest that can be

charged to borrowers on certain loans while also providing borrowers with a

mechanism for enforcing this limitation.  Mich. Comp. L. § 438.31 states, in part:

> The interest of money shall be at the rate of $5.00 upon
> $100.00 for a year, and at the same rate for a greater or
> less sum, and for a longer or shorter time, except that in
> all cases it shall be lawful for the parties to stipulate in

> writing for the payment of any rate of interest, not
> exceeding 7% per annum.

Mich. Comp. L. § 438.31.[2]

This prohibition against charging excessive interest may be enforced

against a "seller or lender" under the following section, Mich. Comp. L. § 438.32,

which states:

> Any seller or lender or his assigns who enters into any
> contract or agreement which does not comply with the
> provisions of this act or charges interest in excess of that
> allowed by this act is barred from the recovery of any
> interest, any official fees, delinquency or collection
> charge, attorney fees or court costs and the borrower or
> buyer shall be entitled to recover his attorney fees and
> court costs from the seller, lender or assigns.

Mich. Comp. L. § 438.32.

This case concerns how these statutes apply when a party is in breach of a

contract that is silent as to interest.  Michigan case law has generally recognized

"two statutes [that] potentially govern the award of interest to the prevailing

party in a contractual dispute."  *Old Orchard by the Bay Assoc.*, 434 Mich. at 250.[3]

Specifically,

---

[2] Higher rates are permitted under MCL 438.31c for certain types of loans.

[3] Michigan common law and statute has long permitted prejudgment interest as a form of relief to make the prevailing party whole, even where the debt instrument is silent as to interest.  *See* William L. Griffin, *Prejudgment Interest in Contract Actions*, 67 Mich. Bar J. 250 (1988).

> Under M.C.L. § 600.6013, interest shall be allowed on a
> money judgment in any civil action and is deemed to
> have begun accruing on the date the complaint was
> filed. In an action founded on contract, however,
> recoverable interest may be deemed to have begun
> accruing, under M.C.L. § 438.7, whenever 'any amount
> of money shall be liquidated or ascertained in favor of
> either party, by verdict, report of referees, award of
> arbitrators, or by assessment made by the clerk of the
> court, or by any other mode of assessment according to
> law.'

*Jones*, 819 F. Supp. at 1383 (citing Mich. Comp. L. §§ 438.7, 600.6013).

Notably, these two statutes do not govern the amount of interest that may

be *directly* charged to the breaching party at any stage of the dispute, rather they

govern the amount of interest that may be included as part of a final damages

award.

Specifically, Mich. Comp. L. § 438.7 creates a rate of "prefiling

prejudgment" interest, which may be included "*as an element of damages* as a

matter of right where the amount of the claim is liquidated."  *RSM Richter, Inc. v.

Behr Am., Inc.*, 781 F. Supp. 2d 511, 519 (E.D. Mich. 2011) (internal quotations

removed and emphasis added).  Specifically, the statute allows:

> In all actions founded on contracts express or implied,
> whenever in the execution thereof any amount in
> money shall be liquidated or ascertained in favor of
> either party, by verdict, report of referees, award of
> arbitrators, or by assessment made by the clerk of the
> court, or by any other mode of assessment according to

> law, it shall be lawful, unless such verdict, report, award,
> or assessment shall be set aside, to allow and receive
> interest upon such amount so ascertained or liquidated,
> until payment thereof or until judgment shall be
> thereupon rendered; and in making up and recording
> such judgment, the interest on such amount shall be
> added thereto, and included on the judgment.

Mich. Comp. L. § 438.7.

Courts have generally employed the 5% interest rate set by Mich. Comp. L.

§ 438.31 when awarding prefiling prejudgment interest under Mich. Comp. L. §

438.7. *See, e.g.*, *Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 438 Mich. 488, 505

(1991) ("This Court, several panels of the Court of Appeals, and federal courts

interpreting Michigan law have consistently filled the interest rate gap in MCL

438.7 . . . by incorporating the "legal rate" provided under MCL 438.31.") (citing

cases); *Holland v. Earl G. Graves Publ'g Co.*, 33 F. Supp. 2d 581, 584 (E.D. Mich.

1998) ("Michigan courts have determined that the appropriate pre-filing rate of

interest is 5%"); *Stryker Corp. v. XL Ins. Am., Inc.*, No. 1:17-CV-66, 2020 WL

631970, at *3 (W.D. Mich. Sept. 15, 2020) (citing *Burland v. John D. Bradshaw,

P.C.*, No. 1:16-CV-983, 2017 U.S. Dist. LEXIS 166688, at *10 n.2 (W.D. Mich. Apr.

28, 2017)) ("Stryker is entitled to prefiling prejudgment interest under M.C.L. §

438.7. 'When the statute applies, the applicable rate is five percent per

annum.'"); *see also Jones v. Jackson Nat. Life Ins. Co.*, 819 F. Supp. 1382, 1384

(W.D. Mich. 1993).   This rate of "prefiling prejudgment" interest has been applied

as an element of damages, calculated starting as early as the date the claim

"accrued," meaning "from the date compensation would have been due had it

been paid voluntarily."  *Jones*, 819 F. Supp. at 1383 (internal quotations and

citations omitted).

Once a complaint is filed, Mich. Comp. L. § 600.6013(8) sets the rate of

prejudgment (but not prefiling) interest that may be awarded from the time a civil

complaint is filed until the date a judgment is satisfied.  It states:

> Except as otherwise provided . . . interest on a money
> judgment recovered in a civil action is calculated at 6-
> month intervals from the date of filing the complaint at
> a rate of interest equal to 1% plus the average interest
> rate paid at auctions of 5-year United States treasury
> notes during the 6 months immediately preceding July 1
> and January 1, as certified by the state treasurer, and
> compounded annually, according to this section.

Mich. Comp. L. § 600.6013(8); *see Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 438

Mich. 488, 506, 475 N.W.2d 704, 714 (1991) (resolving the apparent conflict

between § 438.7 and § 600.6013 by holding that "MCL 600.6013 governs the

award of interest from the date a complaint is filed until judgment is satisfied").

B.    <u>I.Q. Data's proposed interpretation of those statutes to apply that</u>

<u>prefiling interest without a judgment is unsupported in law</u>

I.Q.'s key argument, somewhat obscured by their motion, is that if a contract does not explicitly contain a stated interest rate, Mich. Comp. L. § 438.31 applies, and a default interest rate equal to 5% per annum may be applied to an underlying debt *by a private debtholder, without ever going to court*.  I.Q. Data is correct that a default 5% rate of interest is often applied by *courts* when awarding prefiling interest on a judgment to prevailing parties in contract disputes, but no authority supports their contention that a private debtholder may apply that rate before ever filing suit to collect on debts when no rate of interest was specified in the underlying contract.

The court reaches this conclusion by first reading the Michigan statutes relevant to this question.  The court must read and interpret any statutory language "in the light of history and common sense" and "in the light of previously-established and recognized rules of the common law."  *Honigman Miller Schwartz & Cohn LLP v. Detroit,* 505 Mich. 284, 313 (2020); *Benge v. Mich. Nat'l Bank*, 341 Mich. 441, 452 (1954).  "When deciding between textually supportable interpretations, this Court will also consider which interpretation is 'more consistent with the general legislative plan and purpose.'"  *Soaring Pine Cap. Real Est. & Debt Fund II, LLC v. Park St. Grp. Realty Servs., LLC*., 511 Mich. 89, 129 (2023) (citing *In re Buckley's Estate*, 330 Mich. 102, 119 (1951)).

14

1.   Mich. Comp. L. § 438.7 (allowing prefiling interest) requires a

court order or other form of legal adjudication

As noted, courts have generally employed the 5% interest rate set by Mich.

Comp. L. § 438.31 when awarding prefiling prejudgment interest under Mich.

Comp. L. § 438.7.  However, under § 438.7, this rate of interest does not apply

until the amount is "liquidated or ascertained," which means it is "capable of

ascertainment by mathematical computation or operation of law."  *Holland v. Earl*

*G. Graves Publ'g Co., Inc.*, 33 F.Supp.2d 581, 583 (E.D. Mich. 1998) (citation

omitted).  Courts have read this provision to say that even when a sum is

"liquidated" (i.e. a debt easily computed or known at the original due date), the

assessment that it was liquidated must necessarily be made by operation of law.

*See City of Holland & Holland Bd. of Pub. Works v. Fed. Ins. Co.*, No. 1:13-cv-1097,

2017 U.S. Dist. LEXIS 230133, at *39 (W.D. Mich. Mar. 7, 2017) ("Michigan

authorizes a court to award pre-complaint interest, as damages"); *Old Orchard by*

*Bay Assocs. v. Hamilton Mut. Ins. Co.*, 434 Mich. 244, 254 n.14, 454 N.W.2d 73, 77

(1990) ("The statute recognizes any number of ways by which an amount can

become liquidated or ascertained: 'by verdict, report of referees, award of

arbitrators, or by assessment made by the clerk of the court, or by any other

mode of assessment according to law.'"); *cf. Nathan v. Fieger & Fieger, P.C. (In re*

*Romanzi)*, 31 F.4th 367, 380 (6th Cir. 2022) ("Michigan law specifically

contemplates that when a judicial, arbitral, or other body issues an award arising

from a contract, interest on the award may run . . . "); *Hi-Way Elec. Co. v.*

*Pathman Constr. Co.*, 404 F. Supp. 398, 405 (E.D. Mich. 1971) (finding that the

amount was liquidated); *Stryker Corp. v. XL Ins. Am., Inc.*, No. 1:17-cv-66, 2020

U.S. Dist. LEXIS 168286, at *7 (W.D. Mich. Sep. 15, 2020) (likewise finding that the

amount due was liquidated, but interest under § 438.7 only added by operation

of the court's judgment); *Manley, Bennett, McDonald & Co. v. Saint Paul Fire &*

*Marine Ins. Co.*, 821 F. Supp. 1225, 1227 (E.D. Mich. 1993) ("some sort of legal

assessment is required").  This accords with the statute read in its entirety; §

438.7 does not apply to contracts directly, it applies to "all *actions founded* on

contracts express or implied . . . ." (emphasis added), and interest applied under

the statute "shall be . . . included on the judgment."  Mich. Comp. L. § 438.7.[4]

---

[4] This result also accords with the application of ordinary statutory interpretation to § 438.7.  Under the canon of *ejusdem generis*, "where a general term follows a series of specific terms, the general term is interpreted to include only things of the same kind, class, character, or nature as those specifically enumerated."  *Neal v. Wilkes*, 470 Mich. 661, 662, 685 N.W.2d 648, 649 (2004).  The text of § 438.7 permits lawful interest in contract actions when the amount due is ascertained "by verdict, report of referees, award of arbitrators, or by assessment made by the clerk of the court, or by any other mode of assessment according to law . . . ."  Mich. Comp. L. § 438.7.  Each of the enumerated ways of "ascertaining" an amount under § 438.7 ("by verdict, report of referees . . .") requires some form of third-party legal adjudication – but the result I.Q. argues for would render that list superfluous by transforming § 438.7's catch-all term ("any other mode of assessment according to law") into a powerful tool for creditors to seek interest on a debt without any third-party involvement whatsoever.

In other words, even if a debt is "liquidated" in the sense that a debtholder

may readily determine its amount, the statute says (and courts have held) that

Section 438.7 makes the allowance or disallowance of prefiling interest a matter

within the court's discretion, not a decision of the creditor themselves if they seek

to collect before commencing an action for breach.

      2.    <u>Mich. Comp. L. § 438.31 (setting the 5% maximum interest</u>

              <u>rate) cannot be applied offensively by lenders</u>

Mich. Comp. L. § 438.31 sets the maximum interest rate for some loans at

5% unless the parties agree otherwise.  However, it is not obvious from the

statutory language whether the 5% interest rate maximum can also be used to

affirmatively create a default interest rate that can be applied to parties to a

contract who did not agree to a rate of interest.  *Id.* ("The interest of money shall

be at the rate of $5.00 upon $100.00 . . . .").  Comparing this language to other

relevant statutes, it is notable that both § 438.7 and § 600.6013(8) use language

specifying *when* the relevant interest rate applies.  *See* Mich. Comp. L. § 438.7 (" .

. . the interest on such amount **shall be added thereto, and included on the**

**judgment**) (emphasis added); Mich. Comp. L. § 600.6013(8) ("interest on a money

judgment recovered in a civil action **is calculated** at 6-month intervals from the

date of filing the complaint . . . .").

However, the public policy behind the statute and the "general legislative plan and purpose" easily resolves that issue.  *See Soaring Pine Cap. Real Est. & Debt Fund II, LLC*, 511 Mich. at 129 (citing *In re Buckley's Estate*, 330 Mich. at 119). In opposition to I.Q.'s motion, Nelson argues that Mich. Comp. L. § 438.31, Michigan's *defensive* usury statute, cannot be applied *offensively* to add 5% interest to [] consumers' debt."  ECF No. 40, PageID.394; *see also* ECF No. 1, PageID.16-30.  The court finds this interpretation is supported by the stated history and purpose of Michigan's usury laws.  In a recent case, *Soaring Pine Cap. Real Est. & Debt Fund II, LLC*, 511 Mich. at 109, the Michigan Supreme Court analyzed the history of Michigan's usury laws, reaffirming that "[r]ead together, the pertinent statutes and caselaw provide a 'definite indication' that the public policy behind Michigan's usury statutes is to **protect borrowers** from excessive interest rates imposed by lenders."  *Id.* (emphasis added); *see also Allan v. M & S Mortg. Co.*, 138 Mich. App. 28, 38 (1984) ("The Michigan courts have long recognized that the purpose of the law of usury is to **protect** the necessitous borrower.").

The court also must read the statute "in light of history and common sense" as well as the "previously-established and recognized rules of the common law." *Honigman Miller Schwartz & Cohn LLP,* 505 Mich. at 313; *Benge*, 341 Mich. at 452.

In this case, it is instructive to look at I.Q.'s suggested interpretation in light of Michigan's public policy surrounding the enforceability of contracts.  I.Q. asks the court to impose a 5% interest rate on every contract that does not explicitly include an interest rate to apply in the event of a breach.  *See* ECF No. 36, PageID.367 ("MCL 438.31 applies to contracts without a written, stated rate of interest").  The Michigan Supreme Court has long recognized "[a] fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be *enforced as written.*"  *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468 (2005).  This is based on a strong public policy that "competent persons shall have the liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts."  *Id.* (citation omitted).  Where the terms of a contract are unambiguous, "courts must enforce the terms of the contract as written – neither implying what is absent nor excising what is present."  *See Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 636 (E.D. Mich. 2011) (citations omitted).  It follows that, where some contracts do not include a rate of interest to apply automatically upon breach, it would be contrary to Michigan's policy to read such a term into every such contract.  Of course, once a suit is filed for breach of contract, a court may elect to grant a prevailing party interest as an element of their contract damages.  *See, e.g.*, *Holland*, 33 F. Supp.

2d 581, 583 (E.D. Mich. 1998).  But that is plainly different from deputizing all

private debtholders to add in a 5% interest provision in any contract where their

agreements are silent as to interest.  As Nelson's counsel has argued, Mich. Comp.

L. § 438.31 is written as a shield for the borrower and consumer, not a sword in

the hands of debt collectors.

       3.     <u>No cited authority suggests a contrary interpretation</u>

I.Q.'s allegedly contrary citations are unavailing.  I.Q. cites to *Souden v.

Souden*, *Black v. Contract Purchase Corp.*, and *Hillman's v. Em. 'N Al's* in support

of their assertion that "MCL 438.31 provides that where parties to a contract do

not stipulate to a rate of interest due on a debt owed in writing, the rate shall be

5 percent and the accrual of interest begins on the date the debt first became

due."  ECF No. 36, PageID.373 (citing *Souden v. Souden*, 303 Mich. App. 406, 417

(2013); *Black v. Contract Purchase Corp.*, 327 Mich. 636 (1950); *Hillman's v. Em. 'N

Al's*, 354 Mich. 644, 649 (1956)).  However, these cases all involve the use of

Mich. Comp. L. § 438.31 as a *defensive* statute, not to impose an interest rate on

the underlying amounts due.  In *Souden*, the key question was whether the

imposition of a separate "finance charge" on a purchase qualified as a usurious

interest rate in violation of state and federal law.  *Souden*, 303 Mich. App. at 417.

Similarly, in *Black*, Mich. Comp. L. § 438.31 was again referred to only in its role as

a defensive statute as the Court considered whether a "discount, which was equal in amount to the finance charge on the installment purchase contracts and notes, was far in excess of the allowable rate of interest in this State." *Black*, 327 Mich. at. 642.  Finally, *Hillman's v. Em. 'N Al's* involved a direct application of the defensive function of § 438.51 to a contract which included an explicit rate of interest that was greater than 5%." *Hillman's*, 345 Mich. at 649.

I.Q. further cites a number of cases in support of their argument that, "[p]ursuant to MCL 438.31, where an amount due is settled in contract and no interest provision is included, interest accrues 'from the date compensation would have been due had it been paid voluntarily' at the 'legal rate of 5%.'" ECF No. 36, PageID.375 (citing *Jones*, 819 F. Supp. at 1283).  However, these cases can all be distinguished from the case at hand.  *Jones v. Jackson Nat. Life Ins. Co.* involved a judgment in the amount of $500,000 in favor of the plaintiff, who was the beneficiary of her husband's life insurance policy.  *Jones*, 819 F. Supp. at 1382.  Plaintiff then sought an order awarding her prejudgment interests and costs "as an *element of compensatory damages* from the date her claim for benefits was originally denied by Jackson National until she filed her complaint.  *Id.* at 1383 (emphasis added).  The court did not contest that § 438.31 may be used to award interest "as an element of damages in a contract or tort action to compensate for

the lost use of funds." *Id.*  Similarly, in *Aleris Aluminum Canada, L.P. v. Valeo, Inc.*, the Defendant filed a lawsuit seeking a damages award in the amount of "the value of the released product plus interest, costs, and attorney fees."  718 F. Supp. 2d 825, 829 (E.D. Mich. 2010).  The court found that "Michigan law supports Aleris's request for interest at the rate of 5% per annum from the dates that invoices should have been paid until final judgment," citing *both* Mich. Comp. L. §§ 438.7 and 438.1.  *Id.* at 831.  Additionally, like the case at hand, *Hudson v. Velo Legal Servs., PLC*, involved a lease agreement with a third party, which did not contain a term for charging interest.  No. 2:17-CV-10345, 2019 WL 1515290, at *1 (E.D. Mich. Apr. 8, 2019).  However, unlike this case, the defendants filed a collection lawsuit seeking to collect the amount the plaintiff allegedly owed under the lease, plus interest.  *Id.*  The plaintiff sued the defendant under the FDCPA, arguing that 15 U.S.C. § 1692f(1) "prohibits the collection of any amount of interest unless a contract or the law permits recovery of interest."  *Id.*  The court held that "Michigan law permits recovery of interest on a breach of contract," citing to both Mich. Comp. L. § 438.31 and *Aleris Aluminum Canada L.P.*, 718 F. Supp. 2d at 831.[5]  These three cases, taken together, do not support a finding that

---

[5] While *Hudson* does not directly cite to § 438.7, it is reasonable to assume that the award of interest is grounded in both statutes, not just § 438.31, because the court cited to both § 438.7 and *Aleris*, which permitted the party to seek 5% interest based on *both* Mich. Comp. L. §§ 438.7 and 438.31.  *Id.* at 831

Mich. Comp. L. § 458.31 can act independently to set a default interest rate to be imposed outside of a civil damages award.  Rather, they support a finding that Mich. Comp. L. § 458.31 serves two main purposes: (1) first, as a *defensive* usury statute that acts to protect individuals from interest rates that exceed the statutory maximum, and (2) second, to set the default interest rate that may be imposed by other Michigan statutes, including Mich. Comp. L. § 458.7.  Where, as here, no civil case has been filed and the interest is sought to be collected outside the context of a civil damages award, these cases cannot be used to support I.Q.'s theory.  For these reasons, I.Q.'s imposition of a 5% interest rate without first seeking a judgment has no basis in Michigan law.

      C.    <u>Whether I.Q.'s Attempt to Collect Interest was "Objectively Baseless" and "Legally Indefensible"</u>

I.Q. further argues that, even if Michigan law did not permit them to add 5% interest to the underlying debt, their addition of this amount was not "objectively baseless" and, therefore, is not a violation of the FDCPA.  ECF No. 36, PageID.376.  As stated above, § 1692e of the FDCPA prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt," making a "threat to take any action that cannot legally be taken," or using any "false representation or deceptive means to collect or attempt to collect any debt."  15

U.S.C. § 1692e(2)(A), (5), (10).  However, "Congress did not turn every violation of state law into a violation of the FDCPA."  *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020) (citations omitted).  Rather, a misstatement must be both "material, which is to say capable of influencing the consumer's decision-making process" and "'objectively baseless' at the time it was made, making the misrepresentation 'legally indefensible.'"  *Id.* at 893-94.  Statements will not be considered "legally indefensible" if they are based on an individual "misquoting a case, relying on a statute no longer in existence, or invoking an overruled decision."  *Id.* at 895.

Here, I.Q. sent Nelson a letter seeking to collect an amount that already contained a large amount of interest, and further noted that "[the] outstanding principal balance will accrue interest at a rate of 005.00 percent per annum."  ECF No. 1, PageID.9.  At the time they sought to collect this interest, I.Q. had not yet filed a civil action and, as such, this interest was not part of a request for damages.  As explained above, Defendant has not cited to a *single case or statute* that suggests a debt collector can use Mich. Comp. L. § 458.31 to collect interest at a 5% rate outside the context of a civil damages award.  *Compare* ECF No. 1 (I.Q. Data sought 5% interest in their collection letters), *with Burland v. John D. Bradshaw, P.C.*, No. 1:16-CV-983, 2017 U.S. Dist. LEXIS 166688, at *11 (W.D. Mich.

Apr. 28, 2017) (Defendants filed a complaint in state court and were *then* "entitled to request pre-filing interest" and that "attempt to collect five percent pre-filing interest was [] 'permitted by law' and did not violate the FDCPA.").  As such, these statements would be both "objectively baseless" and "legally indefensible," and are actionable under the FDCPA.

## IV.    CONCLUSION

For the reasons stated above, I.Q. is not entitled to judgment on the pleadings and their motion is **DENIED.**

**SO ORDERED**.

Date: February 6, 2025                          s/F. Kay Behm
                                                F. Kay Behm
                                                United States District Judge