UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON,
individually and on behalf of
similarly situated persons,

      Plaintiff,

v.

I.Q. DATA INTERNATIONAL,
INC.,

      Defendant.

_____ /

Case No. 22-12710

Hon. F. Kay Behm
United States District Judge

Hon. Elizabeth A. Stafford
U.S. Magistrate Judge

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION**
**(ECF No. 80)**

## I.    PROCEDURAL HISTORY

This case is a putative class action against a debt collector for trying to illegally add 5% interest to any debt, regardless of whether the underlying contract stated an interest amount and before any lawsuit to collect had been filed or a judgment entered.  Before the court is Plaintiff's motion for class certification for certain recipients of Defendant's collection letters seeking that interest.

This motion arises in a slightly unusual procedural posture. Defendant was denied judgment on the pleadings because the court

1

found as a matter of law that, taking the facts as alleged by Plaintiff as true, Defendant's conduct violated the Fair Debt Collection Practices Act (FDCPA).  ECF No. 64; *Nelson v. I.Q. Data Int'l, Inc.*, 767 F. Supp. 3d 482 (E.D. Mich. 2025).  The court then entered default against Defendant for unrelated discovery violations as to all counts.  ECF No. 68; *Nelson v. I.Q. Data Int'l, Inc.*, No. 22-12710, 2025 LX 260909, 2025 WL 1779558 (E.D. Mich. June 27, 2025).  After a recent order to show cause for failure to comply with additional court orders, the court entered further sanctions against Defendant, including prohibiting them from contesting certain of Plaintiff's claims relating to class certification.  ECF No. 89.

Plaintiff seeks certification of both a class and subclass under Count I (FDCPA violations) and a second class under Count II (Michigan Occupational Code (MOC) violations).

Although by operation of the order at ECF No. 89, Defendant is prohibited from challenging certain of Plaintiff's arguments as to class certification, Defendant additionally raises the argument that both Plaintiff and the purported classes lack Article III standing.  The court has an independent obligation to review standing and analyze that

point, despite its late presentation.  The court does not find that oral argument is necessary to resolve the issues presented and in light of the order at ECF No. 89.  E.D. Mich. LR 7.1(f)(2).

For the reasons explained below, the court finds that Nelson has Article III standing to assert her claims, certifies the requested classes under Rule 23, and finds that all proposed class members similarly have standing.

## II.   STANDARD OF REVIEW

### A.   Class Certification

"Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Retirement Plan*, 890 F.3d 254, 278 (6th Cir. 2018).  Rule 23(a) contains four requirements that must be met by the plaintiff to serve as the representative on behalf of members of a certified class.  They are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect
the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

In addition to satisfying the requirements of Rule 23(a)(1)-(4) "a class action must fit under at least one of the categories identified in Rule 23(b)." *Clemons*, 890 F.3d at 278. Nelson seeks certification under Rule 23(b)(3). To satisfy Rule 23(b)(3), "questions of law or fact common to class members" must be found to "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also requires superiority, a determination that "class litigation is a superior way to resolve the controversy." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 463 (6th Cir. 2020). The district court must conduct "a 'rigorous analysis' . . . as to all the requirements of Rule 23." *Clemons*, 890 F.3d at 278-79 (citation omitted).

## B. Standing

The Constitution limits federal jurisdiction to cases and controversies. U.S. Const. art. III, § 2. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a plaintiff must have suffered an injury-in-fact that is fairly

4

traceable to the defendant's challenged action and likely to be redressed by a favorable decision. *Id.* at 560–61. The party invoking federal jurisdiction bears the burden of demonstrating standing. *Id.* at 561. An injury-in-fact must be "concrete and particularized" and "actual or imminent" as opposed to "conjectural" or "hypothetical." *Id.* at 560.

## III.  ANALYSIS

### A.  Article III Standing for Plaintiff Nelson

The court must start with a threshold issue raised by Defendant – whether Nelson has Article III standing to pursue her claims.[1]

The court notes that Defendant's response, filed December 1, 2025, is the first time in this case that they have raised standing as an issue. This case was filed in November 2022; Defendant eventually filed a motion for judgment on the pleadings in April 2024. *See* ECF No. 36. Nowhere in that motion did they assert lack of standing. Although this filing is three years late, the rules of civil procedure do

---

[1] To the extent that I.Q. Data also tries to insert a motion for dismissal under Rule 12(b)(1) as to injunctive relief into its response (ECF No. 85, PageID.1367), that is not the subject of Plaintiff's motion for class certification, so that argument is not responsive to the motion. As far as it can be construed as its own motion, such a motion cannot be brought in a response brief to a motion addressing a different subject. *See* E.D. Mich. LR 7.1(d)(1). The court does not address injunctive relief in this order because Defendant has not properly challenged standing or subject matter jurisdiction in that regard.

not allow for waiver of subject matter jurisdiction, which standing speaks to.  *See* Fed. R. Civ. P. 12(h)(1) (a party can waive many defenses under Rule 12(b) by failing to timely raise them, but a 12(b)(1) defense is not similarly waived); *American BioCare, Inc. v. Howard & Howard Attorneys, PLLC*, 702 F. App'x 416, 419 (6th Cir. 2017) ("Article III standing is a question of subject matter jurisdiction properly decided under 12(b)(1)."). However, this very late argument is hardly suggestive of good faith, and may be sanctionable.  *See Bochner v. City of N.Y.*, 118 F.4th 505, 507 (2d Cir. 2024) (considering sanctions against a party for "unnecessarily prolonged litigation . . . by failing to raise its enforcement challenge to standing throughout almost two years of dismissal litigation"); 28 U.S.C. § 1927 (fees and costs are available when an attorney "unreasonably and vexatiously" multiplies the proceedings).

Plaintiff, for her part, argues Defendant cannot bring up this argument at all, citing *Norman v. FCA United States, LLC*, 696 F. Supp. 3d 359 (E.D. Mich. 2023) and *Fox v. Saginaw County*, 67 F.4th 284 (6th Cir. 2023).  *See Norman*, 696 F. Supp. 3d at 375 ("The Court concludes that, given the clarification provided by *Fox* of the

relationship between Article III standing and Rule 23, the issue of standing must be addressed at the motion-to-dismiss stage rather than at the class-certification stage.").  Nelson uses those cases to stand for the proposition that standing must be raised in a motion to dismiss or be waived.  But "Article III standing is a jurisdictional requirement that cannot be waived, and such may be brought up at any time in the proceeding." *Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 531 (6th Cir. 2002) (citing Fed. R. Civ. P. 12(h)(3)); *see also Wendrow v. Mich. Dep't of Human Servs.*, No. 08-14324, 2012 WL 1032691, 2012 LX 35434, at *5 (E.D. Mich. Mar. 27, 2012) ("Standing is not an affirmative defense that must be raised at risk of forfeiture.") (quoting *Community First Bank v. The Nat'l Credit Union Admin.*, 41 F.3d 1050, 1053 (6th Cir. 1994)).  *Norman* involved a plaintiff seeking to *avoid* the standing inquiry at the motion to dismiss stage, and for purposes of this case it simply supports that the court must address standing whenever it is raised.

With that in mind, the court turns to the merits of the issue, and the answer is straightforward: Nelson undoubtedly has standing.

7

Regardless of the amount of actual damages, the receipt of an illegal debt collection letter is itself an injury establishing standing. Any party so aggrieved may bring an action under § 1692e. *See Wright v. Fin. Serv.*, 22 F.3d 647, 650 (6th Cir. 1994) (en banc) ("Given the broad language of the FDCPA, the purpose of the statute, and Congress's intent to make the statute self-enforcing, we find that, at least in this case, the phrase 'with respect to any person' includes . . . the addressee of the offending letters"); *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("the injuries she and the class members alleged were the receipt of the debt collection letters, not the payment of the $12.50 collection fee"). Indeed, courts have consistently interpreted the FDCPA to confer standing on plaintiffs who have suffered no actual harm, allowing them to sue for statutory violations. *See Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 96 (2d Cir. 2008) ("[T]he FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations."); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("[C]ourts have held that actual damages are not required for standing under the FDCPA."). This accords with the understanding that Congress created a private right of

8

action arising out of the statute.  *See Spokeo, Inc. v. Robins,* 578 U.S. 330, 348 (2016) (Thomas, J., concurring) (*citing Tennessee Elec. Power Co. v. TVA,* 306 U.S. 118, 137–138 (1939) ("recognizing that standing can exist where 'the right invaded is a legal right,—. . . one arising out of contract, . . . or one founded on a statute which confers a privilege'").

Incredibly, Defendant tries their "lack of standing" argument against persuasive circuit precedent against I.Q. Data itself less than two months before filing their response to this motion.  *See Six v. IQ Data Int'l, Inc.,* 129 F.4th 630, 632-33 (9th Cir. 2025) (holding that "an individual who receives a letter in violation of [15 U.S.C.] § 1692c(a)(2) [(the FDCPA)] has standing to bring a claim" because "[a]busive debt collection practices contribute to . . . invasions of individual privacy."). As that Court of Appeals pointed out, I.Q. Data's theory of standing would call into question consumers' ability to enforce rights under a variety of existing and well-established statutes.  *See, e.g., Dickson v. Direct Energy, LP,* 69 F.4th 338, 348-49 (6th Cir. 2023) (holding that one silently delivered voicemail in violation of the TCPA was a concrete injury).

The court rejects I.Q. Data's belated ambush and finds that Nelson has standing to pursue these claims.

## B.     Rule 23

### 1.     *Proposed classes and subclass*

For Count I, the proposed FDCPA class and subclass are defined as follows:

**Class**:

> NELSON, and all persons in Michigan, who during a time period from one-year prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that stated in the letter, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum", and stated an amount of "Interest Due", an amount that was also included in the "Total Due", where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract.

**Subclass**:

> NELSON, and all persons in Michigan, who during a time period from one-year prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that

10

> stated in the letter, "Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum", and stated an amount of "Interest Due", an amount that was also included in the "Total Due", where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract, <u>and at any time either made a payment above the amount of the "Principal Due" claimed by I.Q., disputed the debt in writing or requested verification of the debt in writing</u>.

ECF No. 1, PageID.33 ¶ 156 (emphasis added).

For Count II, the MOC proposed class definition is:

> **NELSON**, and all persons in Michigan, who during a time period from six years prior to the filing of this civil action until the filing of this civil action, were sent a letter from I.Q. Data International, Inc., and the letter was not returned to Defendant as undeliverable, that stated in the letter, 'Your outstanding principal balance will accrue interest at a rate of 005.00 percent per annum', and stated an amount of 'Interest Due', an amount that was also included in the 'Total Due', where Defendant's records did not contain a contract that expressly provided for a rate of interest of 5% per annum, or more, to be assessed upon an alleged breach of the original creditor-debtor contract.

ECF No. 1, PageID.40 ¶ 183.[2]

> 2.   *Rule 23(a)*

>> a.   Numerosity

To prove numerosity, a Plaintiff must demonstrate that the putative class is "so numerous that joinder of all members is impracticable." *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005) (citing Fed. R. Civ. P. 23(a)(1)). While there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). For example, "'a class of 40 or more members raises a presumption' of numerosity[.]" *Pickett v. City of Cleveland*, 140 F.4th 300, 308 (6th Cir. 2025) (*quoting Helwig v. Concentrix Corp.,* 345 F.R.D. 608, 619 (N.D. Ohio 2024) (citation omitted)). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (2004) (citation omitted).

---

[2] Nelson is abandoning the class allegations as to Count III.  ECF No. 80, PageID.1294 n.1.

Count I, the FDCPA class has 3,782 members.  ECF No. 42-5, PageID.484 ¶ 1.  The proposed declaratory and injunctive classes in Counts IV and V, contain at the very least the number of persons in Count I, minus the number of persons in the subclass who made a payment, 303, leaving at a minimum 3,479 persons.  The subclass in Count I has "a maximum of 303 persons in Michigan [who] paid a total of $23,952.55 above the principal amount during the subject time period", and "a maximum of 90 persons in Michigan [who] disputed the debt in writing during the subject time period."  ECF No. 77-4, PageID.1260.  The MOC class under Count II has 11,056 members.  ECF No. 42-5, PageID.486 ¶ 8.  Joinder would not be feasible or practicable for any of these classes or subclasses, and numerosity is met as to each.

### b.    Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 349-50 (2011) (cleaned up).  That "requires more than a showing that 'they have all suffered a violation of the same provision of law.'"  *Doster v. Kendall*, 48 F.4th 608, 612 (6th Cir. 2022) (quoting *Wal-*

*Mart*, 564 U.S. at 350. "[I]t requires that the class members' claims 'depend upon a common contention' whose resolution 'will resolve an issue that is central to the validity of each one of the claims in one stroke.' Thus a common question, for purposes of Rule 23(a), is one that is likely to 'generate common answers' class-wide." *Doster*, 48 F.4th at 612 (*citing Wal-Mart*, 564 U.S. at 350) (emphasis omitted). A common question "must (1) yield a common answer with common evidence and (2) meaningfully progress the lawsuit." *Speerly v. GM, LLC*, 143 F.4th 306, 316 (6th Cir. 2025).

A common injury is shared by all class members in this case: receipt of a form debt collection letter from Defendant which claimed 5% interest to be due and owed on a contract without a stated rate of interest. "When the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met[.]" *Gilkey v. Cent. Clearing Co.*, 202 F.R.D. 515, 521 (E.D. Mich. 2001). The question of whether I.Q. could send those debt collection letters claiming that 5% interest was due on each individual contract's outstanding principal amount when the original contract did not provide for interest is a common question of the legality of standardized conduct. *See, e.g., id.*

14

("the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents") (*quoting Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)).  The court has, in this posture, already decided that common question of law related as to Nelson, illustrating that said question can be answered in "one stroke."  *See* ECF No. 64.[3]  That the legality of this common injury and course of conduct is the central issue in this case means that a common resolution of the legality of that conduct will "meaningfully progress" this suit as to all claimants.  *See Speerly*, 143 F.4th at 316.

> c.    Typicality

Typicality is satisfied when the named plaintiff's are aligned with the represented class so that in pursuing her own claims, the plaintiff "will also advance the interests of the class members."  *In re Am. Med.*

---

[3] When or if the court answers that same question under the MOC likewise meets that commonality requirement.  Mich. Comp. Laws § 339.915a(1)(e) prohibits "Demanding . . . or collecting or receiving a fee or other compensation from a consumer for collecting a claim, other than a claim owed to the creditor under the provisions of the original agreement between the creditor and debtor." § 339.915(f)(ii) prohibits "[m]isrepresenting in a communication with a debtor any of the following: . . . (ii) the legal rights of the . . . debtor."  § 339.915(e) prohibits "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt . . . ."  The similarity of these provisions to the relevant provisions of the FCPA is sufficient to show that they pose substantively similar legal questions in this case.

*Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (citation omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge". *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Generally, "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (*quoting In re Am. Med. Sys.*, 75 F.3d at 1082).

Typicality is met here as Nelson's, the classes', and subclass' claims are all premised upon I.Q. attempting to collect 5% interest contrary to each of their contracts that does not provide for a rate of interest. I.Q. violated the FDCPA (and allegedly the MOC) in imposing 5% interest on the principal amount alleged owed, while no interest rate or accrual was stated in the underlying contracts. As to the subclass, each of the subclass members took some action that incurred monetary damages, either by paying the "interest due" or by disputing the debt and "interest due." Nelson disputed the debt in writing (ECF No. 1, ¶ 6) and is a member of the subclass who incurred actual damages.

True, the reason for why each claimant in the subclass incurred actual damages is different depending on whether it is due to the cost of disputing the debt-plus-illegal-interest in writing (*see* ECF No. 1, ¶ 149) versus due to paying the debt plus any illegally added interest.  But that is at core just a different kind of damages calculation, not a different question of liability.  Typicality is met even though some class members may have different or no out-of-pocket damages, while others will have some amount of illegal interest paid, and others will have damages related to the written dispute of the debt.  *See Whirlpool*, 722 F.3d at 861; *see also Pickett v. City of Cleveland*, 140 F.4th 300, 310 (6th Cir. 2025) ("The fact that some members of the Water Lien Class may not be eligible for damages, or may receive damages in varying amounts, does not invalidate the district court's certification of the Class based on a common question."); *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998) ("The injury common to classes A and B was the receipt of the [] collection letters which, as Keele's motion for class certification alleges, 'illegally add unauthorized collection fees to the amount claimed and misrepresent that the debtor will owe amounts to which he or she is not legally liable . . . .'  The damages recoverable for the class

17

members' injuries may differ--some may be eligible for both actual and statutory damages, others actual damages only, and still others just statutory relief--but the fact remains that their injuries are the same.").; *Schafer v. Allied Interstate LLC*, No. 1:17-CV-233, 2020 WL 4457922, at *11 (W.D. Mich. Aug. 2, 2020) (certifying settlement class based on receipt of form collection letter with smaller subclasses who had actual damages).  The common question of law is the same for all members of the subclass.  The fact that Plaintiff suffered *some* amount of actual damages, however minimal that amount, is sufficient to make her claim typical of the subclass that includes both those who incurred damage by disputing the debt and those who actually paid some amount of illegally charged interest.  *See Keele*, 149 F.3d at 593 ("She, like the members of those classes, received the [] letters, both purported to be in violation of the FDCPA and CFDCPA.  It is . . . irrelevant whether or not she paid the collection fee."); *e.g. Schafer*, 2020 WL 4457922, at *11 (certifying the similar FDCPA class even where defendant argued that "issues pertaining to actual damages will predominate over class issues and necessitate highly fact-intensive, individualized inquiries").  This does not pose an issue of administrability of damages on a class-wide basis.

18

For this subclass, the fact or question of law regarding the violation of the FDCPA is both typical of all class members and predominates over any difference in the mechanism in which their damages arose. Defendant's defenses or arguments to the contrary were waived, forfeited, or otherwise prohibited by the sanctions order for discovery violations after Defendant's default.  ECF No. 89.

### d.    Adequacy

Adequacy of representation requires that representatives "will fairly and adequately protect the interests of the class." *Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997).  Two factors determine adequacy under Rule 23(a)(4): first, "common interests with unnamed members of the class" must be found, and second "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).  As to the first factor, because parties have incentives to litigate their own claims, adequacy generally overlaps with typicality.  *See In re Am. Med. Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996).  As explained, Nelson is a member of all classes and the subclass,

and her claim is typical and adequate to protect the interests of other class members.  As to the second, Plaintiff has vigorously prosecuted this case, which is the best evidence that she will continue to do so on behalf of the classes and subclass.  The court also finds that Plaintiff's counsel is experienced, qualified class action counsel who will continue to push this case forward.  *See* ECF No. 80-3, PageID.1338-51; ECF No. 80-4, PageID.1349-50; *Wayside Church v. Van Buren Cty.*, No. 24-1598, 2025 LX 469903, at *40 (6th Cir. Oct. 6, 2025) (no abuse of discretion in the district court's assessment of . . . counsel [as] experienced, recognized class action litigators"); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (relevant that it was "undisputed that class counsel here is 'qualified, experienced, and generally able to conduct the litigation.'").

> 3.    *Rule 23(b)(3)*

Next, Plaintiff must satisfy Rule 23(b) by showing that the common question of fact or law "predominates" over any questions affecting only individual members, and that the class action litigation is a superior way to resolve the controversy.  Where a common course of conduct has injured a large number of plaintiffs, and where individual

20

damages may be small, adjudication on the classwide scale can be "warranted particularly because class members are not likely to file individual actions—the cost of litigation would dwarf any potential recovery." *In re Whirlpool Corp.*, 722 F.3d at 861. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997)). As part of this inquiry, the district court should also consider "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Here the class members received the same form letter that contained an amount of "interest due" whereas their underlying contracts did not contain an amount of interest. The common question

of liability, whether I.Q. could unilaterally add 5% interest under Mich. Comp. L. § 438.31 and send those letters at all, predominates over any individual question of actual damages that may result in unique damages recoveries for each claimant.  As explained by the Third Circuit, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 298 (3d Cir. 2011).  The degree or amount of harm to individual class members is secondary here to the predominating issue that Defendant's conduct was common as to all class members.  And even for those who can show actual damages as a result of this conduct, that recovery is likely to be small enough that class-wide litigation is the superior method of resolving this controversy.  Because any individual's own recovery is likely too small to encourage their bringing their own action, no efficiency is gained by requiring each of the hundreds or thousands of potential claimants to bring their own suit.  Each claimant's interest is protected by prosecution of this matter as a class action; in reaching that conclusion the court also considers that the FDCPA question has

already been answered by Plaintiff (potentially on behalf of all similarly situated persons, and to their benefit) and efficiency counsels the class action format.  The classes are also only made up of residents of this state, and thus the forum is desirable for all potential class members.  Finally, the difficulties of managing this class action are not extensive.  A similar class and subclass involving a form letter seeking to collect a time barred debt, where some class members did nothing, others disputed the debt, and others paid on the time-barred debt, was certified for settlement purposes in *Schafer v. Allied Interstate LLC*, No. 1:17-CV-00233, 2021 WL 9405296, at * 1 (W.D. Mich. Jan. 15, 2021); that court noted no particular concerns about administrability.  *See also Schafer*, 2020 WL 4457922, at *11.

### 4.    *Effect of Sanctions Orders*

The court recently entered an order prohibiting Defendant from disputing numerosity, typicality, commonality, superiority, and that there are common questions of fact and law that predominate, or from introducing new evidence to dispute those claims, on the pending motion for class certification.  ECF No. 89.  However, the proponent of a motion for class certification at all times bears the burden of showing

23

that class certification is appropriate and that the requirements of Rule 23 are met. *See Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 851 (6th Cir. 2013) ("The plaintiffs carry the burden to prove that the class certification prerequisites are met, and the plaintiffs, as class representatives, were required to establish that they possess the same interest and suffered the same injury as the class members they seek to represent.") (citations omitted). So the court has above evaluated Plaintiff's arguments on their own merits.

The court notes that Plaintiff, in this motion, also seeks a class-wide default judgment as an alternative sanction for Defendant's violation of discovery orders and for bringing standing up at this late hour. *See* ECF No. 80, PageID.1298. But the court has already entered all relevant orders on discovery sanctions, so it would be improper to enter more on that basis, and has explained why Defendant was at least technically allowed to bring up standing at this time. To the extent that Defendant has "unnecessarily multiplied the pleadings to vex Nelson in this Court" (ECF No. 80, PageID.1299), Plaintiff seems to be invoking 28 U.S.C. § 1927 – but that provision does not offer default as a

24

sanction, merely fees.  So to the extent that Plaintiff's class certification motion seeks a classwide default judgment on either basis, the motion is denied.

However, while the court has described why class certification is proper, and why Defendant was barred by the sanctions order from contesting numerosity, commonality, typicality, adequacy, and predominance on this motion (albeit after this briefing was submitted), the court finds it prudent to specifically address why Defendant's arguments should be rejected in light of multiple prior sanctions orders in this case and on the merits of its arguments, even setting aside the most recent sanctions order.

> a.   Whether the FDCPA covers individual class members' underlying contracts

To start, the court rejects Defendant's argument that "extensive individualized fact-finding would be necessary to determine class membership."  ECF No. 85, PageID.1381.  In Defendant's view, there is allegedly no administratively feasible way to determine whether each of the debts of the 3,782 people identified by IQ Data were "incurred for personal, family or household purposes," which is required to prove a

violation of the FDCPA. *Id.* There are three reasons to reject this argument. First, I.Q. Data should be properly considered to have forfeited these arguments by their conduct in this case and by their prior statements to the court. Plaintiff sought information about the underlying contracts in their discovery requests from the outset. *See* ECF No. 30-2, PageID.293-94 (interrogatories 11 and 12 sought identification of the underlying contracts as to all persons sent a letter seeking 5% interest); ECF No. 30-3, PageID.303 (requests for production 15 and 16 sought the contracts themselves). But Defendant, over and over, refused to engage in discovery or produce any of this information. *See* ECF No. 30 (motion to compel); ECF No. 37 (granting motion to compel); ECF No. 42 (motion for sanctions for noncompliance with ECF 37); ECF No. 48 (granting that motion in part); ECF No. 50 (supplemental brief indicating still no compliance); ECF No. 53 (granting the motion). I.Q. Data flouted orders by the Magistrate Judge concluding that Defendant had waived their objections to producing this material, and therefore they had an obligation to produce it. *See* ECF Nos. 48, 53. Had Defendant turned over those contracts as requested and ordered, they could not now claim confusion as to which debts of

which proposed class members properly fit under the definitions of the FDCPA, nor claim any difficulty in making that determination. Moreover, Defendant previously made representations to the court that are facially inconsistent with their latest briefing.  I.Q. Data previously refused to perform an individualized review of its accounts because, in their own words, such review would have *no impact on class certification*.  ECF No. 46, PageID.513 ("[Plaintiff] wants this Court to order Defendant to make a file-by-file review of more than 11,000 consumer accounts.  And to what end?  Such an expensive, pointless exercise has no impact on the legal merits of this dispute . . . , nor would it have any impact on class certification.").  They are procedurally barred from making these arguments by their default, by the sanctions entered against them, by their prior arguments to the court, and by their conduct during discovery on these issues.  *See* ECF No. 89; Fed. R. Civ. P. 37(b)(2)(A)(ii); *see also Walker v. United States*, 134 F.4th 437, 440-41 (6th Cir. 2025) (waiver can be implied by a course of conduct); *CollegeStreet Imp. & Exp. (Tianjin) Co. v. TL x HF, LLC*, 777 F. Supp. 3d 238, 247 (S.D.N.Y. 2025) (a party may waive a later-raised argument by adopting an inconsistent position in an earlier brief).

Second, I.Q. Data does not present any evidence that this argument in fact applies to any proposed member of the class – but their argument is based on information that is undoubtedly in their possession. *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 462 (6th Cir. 2020) ("the record contains no evidence that this issue would affect the class"). So in this posture, Defendant I.Q. Data cannot credibly claim that Plaintiff Nelson lacks enough information to prove their entitlement to class certification because I.Q. Data has a) waived these objections by their failure to produce the materials that would have made closer distinction possible and by stating that discovery was not relevant to class discovery, and b) not come forward with any evidence suggesting that this argument applies to even a single proposed class member.

Finally, even if I.Q. Data's argument has any merit at all in that they ought to be allowed yet more time to conduct a file-by-file review to determine which of these individuals actually belong in the class, "the need to review individual files to identify its members are not reasons to deny class certification." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). Defendant has repeatedly characterized their

28

ability to conduct a file-by-file review as arduous and has attempted to rely on this rationale to escape their discovery obligations – and now to escape class certification. *See* ECF No. 63, PageID.1034-36. The court has rejected that argument and found it incredible. *See id.*; ECF No. 68, PageID.1154. Many courts have held that difficulties in determining whether individual debts fall under the FCPA does not serve as an automatic bar to class certification. *See Butto v. Collecto, Inc.*, 290 F.R.D. 372, 393 (E.D.N.Y. 2013) (collecting cases). In this case, "the need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to . . . the manner in which their business records were maintained." *Young*, 693 F.3d at 540. Even if I.Q. Data were still allowed to reach the merits of this point in spite of their default, the duty to retrieve and review their own business records would not here prevent class certification.

> b.    Whether claim preclusion bars relitigation for some class members

Defendant also argued that Plaintiff's proposed class definitions are insufficient insofar as they fail to exclude those individuals who

cannot maintain the claims asserted as a result of judgments entered against them.  ECF No. 85, PageID.1382.  In Defendant's view, Plaintiff's proposed class would allegedly include class members who were found to be liable to pay the original creditor the principal balance and 5% interest or a higher rate.  According to I.Q. Data, a valid judgment finding that class members did not actually owe the interest would undermine the fundamental validity of those prior judgments. *Id.*

Again, as far as this argument is a defense to whether the class-wide question of law predominates, Defendant is (it bears repeating) procedurally barred by the sanctions order at ECF No. 89.  But several more reasons justify rejecting this argument.  First, it does not, as far as the court can tell, accurately capture the legal issue at stake, and would only apply to the FDCPA actual damages subclass if at all.  In its decision on Defendant's motion for judgment on the pleadings, the court did not find that I.Q. Data could not seek 5% interest on a contract *after obtaining a judgment*; it found that it could not unilaterally add 5% interest *prior* to filing suit and obtaining a judgment when the underlying contract did not provide for interest.  *See Nelson v. I.Q. Data*

30

*Int'l, Inc.*, 767 F. Supp. 3d 482, 494 (E.D. Mich. 2025) ("I.Q.'s imposition of a 5% interest rate without first seeking a judgment has no basis in Michigan law.").  So if I.Q. Data did in the past seek and obtain a judgment against a creditor who is a potential class member here, nothing in the court's prior merits decision would cast any doubt on the invalidity of that judgment and the interest rate imposed or collected by operation of that judgment.  But the sending of a collection letter seeking 5% interest prior to the time I.Q. Data filed suit to collect on the underlying debt would have violated the FDCPA *regardless* of whether I.Q. Data eventually properly sought a civil judgment, and that class member would still be entitled to their pro-rata portion of statutory damages as a member of the general FDCPA class (though they would not be a member of the actual damages class because their payment of interest would be pursuant to a proper judgment).  So a valid judgment in this case finding that Defendant violated the FDCPA in the sending of the collection letter prior to seeking a judgment would not, in fact, cast any doubt on the validity of a prior judgment as to a particular creditor.  It would only – and here this argument also assumes that the court could not later exclude these individuals from the subclass or bar

31

their actual damages – <u>potentially</u> cast doubt on a prior judgment for a creditor who a) actually paid interest to I.Q. Data on an applicable debt where the underlying contract did not provide for interest, *and* b) I.Q. Data sought and obtained a judgment prior to collecting that interest. Properly construed, this is a much narrower argument and potential defense to a portion of damages, and only as to individual members of the proposed FDCPA subclass.[4]

But as to that defense, it is again worth repeating that I.Q. Data repeatedly violated court orders regarding discovery, and it appears from a review of the record that they refused to produce discovery that could have cast light onto this topic long before now. *See, e.g.*, ECF Nos. 30, 37, 42, 48, 50, 53 (broadly, illustrating that Plaintiff sought proposed individual class members' underlying contracts and file-specific information and I.Q. Data never produced that information). I.Q. Data's attempt to characterize the need to further differentiate between class members as Plaintiff's burden should properly be seen as an attempt to misdirect from their own misconduct, failure to produce,

---

[4] And to the extent it could cast doubt on any prior judgments, the aggrieved party would simply be I.Q. Data, who presumably enforced those judgments. I.Q. Data is capable of waiving or forfeiting any sort of claim preclusion defense where they are the party who would assert claim preclusion (*see* Fed. R. Civ. P. 8(c)).

and prior representations that a lack of file-by-file review would have no impact on class certification. *See* ECF No. 46, PageID.513.

It is also worth noting that claim preclusion or estoppel is an affirmative defense that must be pleaded at the first opportunity or is waived. *See* Fed. R. Civ. P. 8(c); *Arizona v. California*, 530 U.S. 392, 410 (2000) ("res judicata [is] an affirmative defense ordinarily lost if not timely raised"). Defendant did not plead that defense, and so likely waived it; Defendant's affirmative defenses were in any event stricken at the time of their default. *See* ECF No. 12; ECF No. 68.

And as above, even if the court did accept I.Q. Data's argument that it should have the opportunity to prove individualized defenses as to individual class members despite its failure to produce discovery into these issues prior to this point, despite its default and stricken answer, and despite its waiver of the affirmative defense by failure to timely assert it, the record contains no evidence that this issue would in fact affect the class at this stage. *See Hicks*, 965 F.3d at 462 ("Even if we did accept State Farm's position that it should have an opportunity to prove individualized defenses based on its unrelated errors, the record contains no evidence that this issue would affect the class"). Defendant,

33

as debt collector, is likely in possession of any state court judgments related to these individual claims.  As has been often the case throughout this litigation, I.Q. Data makes bald assertions without bringing forward any underlying evidence (and then refuses to produce that evidence or claims it would be too difficult to do so).  This "speculation and surmise" (or perhaps bad faith argument) is not sufficient "to tip the decisional scales in a class certification ruling." *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) ("Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance.") (citations omitted).  And if in the alternative, this sub-issue were to become relevant and supported by evidence at a later stage, and if the court were to consider that argument on the merits, the court could at that time determine whether changes to Plaintiffs' class definition or the addition of sub-classes resolves any issue that arises.  *See Hicks*, 965 F.3d at 462; *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) ("if evidence later shows that a 'defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms.  For example, it can place class

members with potentially barred claims in a separate subclass, or exclude them from the class altogether.'") (quoting citation omitted).  In that hypothetical future circumstance, this purported defense would affect certain subclass members in an easily-administrable and binary manner (if it affected any at all), and does not predominate over the common questions of fact and law the court has described above.

All three proposed classes (the FDCPA class, actual damages subclass, and MOC class) are therefore certified under Rule 23.

### C.    Article III Standing for Class Members

Because class members are not parties before class certification, a court need not worry about their standing until it certifies the class. *Fox v. Saginaw Cty.*, 67 F.4th 284, 296 (6th Cir. 2023) (citing *Amchem*, 521 U.S. at 612-13).  But once the class is certified, their standing is at issue.  Defendant also challenges class members' standing.  ECF No. 85, PageID.1379.

But for the same reasons Nelson has standing, each of the other members of the class – who all were sent a form letter in violation of the FDCPA – have standing to pursue their claims.  The MOC class have standing to pursue their claim to establish whether this conduct also

35

violated the MOC.  The members of the subclass likewise have standing

for the receipt of the illegal collection letter.  *See Keele v. Wexler*, 149

F.3d 589, 593 (7th Cir. 1998) ("The damages recoverable for the class

members' injuries may differ--some may be eligible for both actual and

statutory damages, others actual damages only, and still others just

statutory relief--but the fact remains that their injuries are the same.").

## IV.   CONCLUSION

The motion for class certification is therefore **GRANTED IN**

**PART** in accordance with the above, and the requested classes are

certified.  The motion is **DENIED** as to a class default judgment.

**SO ORDERED**.

Date: February 4, 2026                     s/F. Kay Behm
                                           F. Kay Behm
                                           United States District Judge

36